GLORIA JACKSON *v.* R. G. WHIPPLE, INC., ET AL.
(14478)

PETERS, C. J., CALLAHAN, BERDON, NORCOTT and KATZ, Js.

Argued January 13—decision released June 8, 1993

*Barry J. Ward,* with whom, on the brief, was *Gilbert Shasha,* for the appellant-appellee (plaintiff).

*Dale P. Faulkner,* with whom, on the brief, was *Kerin M. Woods,* for the appellee-appellant (named defendant).

*Thomas G. Moukawsher,* for the appellee (defendant Edward E. Moukawsher).

CALLAHAN, J. This appeal arises from an action brought by the plaintiff, Gloria Jackson, against the defendants, R. G. Whipple, Inc. (Whipple), and Edward E. Moukawsher, for damages resulting from actions taken by the defendants to remove the plaintiff's mobile home from Whipple's trailer park. The plaintiff appealed and Whipple cross appealed to the Appellate Court from the judgment of the trial court. We transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We reverse in part, and affirm in part, the judgment of the trial court.

The relevant facts are as follows. The plaintiff owned a mobile home situated on a lot that she had leased from Whipple, owner of R. G. Whipple Trailer Park in Mystic. The plaintiff resided in her mobile home from April 1, 1985, to January 31, 1987. On March 26, 1986, Whipple, by its attorney, Moukawsher, brought a summary process action against the plaintiff. On January 31, 1987, the plaintiff moved out of her mobile home and into her mother's mobile home that was situated on an adjoining lot that the plaintiff's mother had leased from Whipple in December, 1986.

A judgment on the summary process action was rendered in favor of Whipple on August 8, 1986. That judgment was appealed but the appeal was later dismissed. The date for the execution of the eviction order was, however, extended.

While the execution of the eviction order was still pending, the defendants commenced a collection action against the plaintiff to recover legal costs and expenses incurred in the summary process action. In connection with the collection action, the defendants, on February 3, 1987, filed an application for a prejudgment remedy. The trial court granted the defendants' application and ordered an ex parte prejudgment attachment of the plaintiff's mobile home. A sheriff served the order and notice of the attachment at the plaintiff's mobile home and certified that he had made service on the plaintiff "at the usual place of abode." The plaintiff claimed that she never received those documents.

Thereafter, on February 21, 1987, the sheriff executed both the eviction order and the attachment. In doing so, he entered the plaintiff's lot with R.G. Whipple, the president of Whipple, and removed the plaintiff's mobile home to another location on Whipple's property.

On March 11, 1987, Whipple filed a motion for a default judgment against the plaintiff for failure to appear in the collection action and, on that same day, sent a copy of the motion to the plaintiff at her "last known address," her mobile home. On June 8, 1987, the trial court rendered a default judgment against the plaintiff in the collection action in the amount of $2477.68. The defendants filed a notice of judgment, and mailed a certified copy to the plaintiff, again at her "last known address."

The plaintiff moved to open the default judgment in the collection action. A hearing was held on the motion to open at which the parties addressed the issues of whether adequate notice of the collection action had been provided and whether the defendants were entitled to the legal fees and costs accrued in the sum-

mary process action and sought in the collection action. After oral argument, the trial court, *Flanagan, J.,* denied the plaintiff's motion to open.

On March 24, 1988, an execution issued on the default judgment in the collection action, notice of sale of her mobile home was served on the plaintiff, and the sale was advertised in the local newspaper. The mobile home was ultimately purchased by Whipple at an auction on May 14, 1988.

On July 11, 1988, the plaintiff filed a seven count complaint against the defendants alleging improprieties in both the eviction and collection actions. The defendants moved for summary judgment on all counts. The trial court, *Hurley, J.,* granted the motion on the ground of res judicata as to counts one and two, which alleged abuse of process against both defendants. On July 26, 1991, the defendants then moved to strike from the July 11, 1988 complaint counts three and four, which alleged violations of General Statutes § 52-356a concerning the execution employed to collect the default judgment and the sale of the plaintiff's mobile home.[1] The trial court granted the defendants' motion to strike as to those counts.

---

[1] The plaintiff specifically alleged that the defendants had failed to provide notice to the plaintiff twenty days before the sale of her mobile home and that the sale of her mobile home had not been commercially reasonable.

General Statutes § 52-356a provides in part: "EXECUTION AGAINST CERTAIN NONEXEMPT PERSONAL PROPERTY. . . .

"(b) SALE. (1) The judgment debtor's interest in personal property levied on pursuant to an execution, other than any money so obtained, shall be sold by the levying officer, or by an indifferent person deputed to act on his behalf, or by such other levying officer as the court in which the money judgment was rendered directs, in accordance with subdivisions (2) and (3) of this subsection. The sale shall be held at such time and place and in such manner as is commercially reasonable. The sale shall be subject to, and shall not affect, any secured interests, including any such liens, that are senior in right to the execution. No sale may be made to any levying officer, or

The plaintiff then filed an amended two count complaint against both defendants. Count one of the amended complaint alleged that both defendants' actions in removing and selling her mobile home violated General Statutes § 42-110b (a) of the Connecticut Unfair Trade Practices Act (CUTPA). Count two alleged negligence against Whipple regarding its actions in removing and selling the plaintiff's mobile home.

At the outset of the trial on the amended complaint, the defendants moved to exclude evidence and testimony concerning issues that they claimed had been previously litigated in the prior collection action. The trial court granted the defendants' motion and excluded such evidence throughout the trial.

On August 13, 1991, the jury returned a verdict against Whipple on count two only and against Moukawsher on count one. The jury determined that fair, just and reasonable damages be set at $10,000. All three parties moved to set aside the verdict. The trial court granted Moukawsher's motion and denied the plaintiff's motion. Whipple withdrew its motion. The trial court, *Leuba, J.,* rendered judgment for the plaintiff against Whipple only.

to his agent or associate. The property shall be present and within view of those attending the sale unless otherwise ordered by the court.

"(2) Notice of the time and place of sale and of the name and address of the levying officer shall be (A) sent by first class mail, postage prepaid, to the judgment debtor and to each holder of a lien or other secured interest in the property at their last-known addresses and (B) posted in the office of the town clerk in the town where the property is to be sold. On application of the judgment debtor or any other party in interest, the court may order further notice to be given, by publication or otherwise.

"(3) Notice shall be given at least twenty days prior to the date of sale unless the property is perishable or threatens to decline speedily in value. If the property is perishable or threatens to decline speedily in value, the court, on application of any party or of the levying officer, may, ex parte, order shorter notice."

The plaintiff claims that the trial court improperly: (1) granted the defendants' summary judgment motion on the ground of res judicata as to counts one and two of the original complaint filed in this action; (2) excluded at trial, on the ground of res judicata, evidence and testimony that the defendants intentionally acted to prevent the plaintiff from receiving notice of the collection suit in order to procure a default judgment; and (3) set aside the verdict against Moukawsher for damages resulting from his alleged violation of General Statutes § 42-110b.[2]

I

The plaintiff first claims that the trial court improperly granted the defendants' motion for summary judgment as to the abuse of process claims raised in her original complaint. The plaintiff specifically argues that the trial court improperly determined that her allegations relating to abuse of process against the defendants were barred by res judicata. We agree.

On April 18, 1991, the defendants moved for summary judgment, arguing that res judicata and collateral estoppel applied to the plaintiff's entire original complaint. In their memorandum attached to the motion for summary judgment, the defendants specifically asserted that the factual issues raised in the plaintiff's July 11, 1988 complaint were litigated and decided against the plaintiff in the previous collection action. The trial court granted "on the grounds of res judicata" the defendants' motion for summary judgment as to

[2] The defendant and cross appellant, Whipple, claimed that the jury verdict in favor of the plaintiff and against Whipple was the product of plain error. At oral argument before this court, Whipple stated that it was prepared to satisfy the trial court's judgment against it and withdraw its claim on appeal. Consequently, we will not address that claim. *Habetz* v. *Condon*, 224 Conn. 231, 618 A.2d 501 (1992); *Rostain* v. *Rostain*, 213 Conn. 686, 688 n.3, 569 A.2d 1126 (1990).

counts one and two of the plaintiff's original complaint that alleged abuse of process. The court did not articulate its reasons further.

In reviewing the plaintiff's claim that the trial court improperly granted the defendants' motion for summary judgment, we recognize that "[i]n deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) *Connecticut Bank & Trust Co.* v. *Carriage Lane Associates*, 219 Conn. 772, 780–81, 595 A.2d 334 (1980). Because res judicata or collateral estoppel, if raised, may be dispositive of a claim, summary judgment was the appropriate method for resolving a claim of res judicata. *Zizka* v. *Water Pollution Control Authority*, 195 Conn. 682, 687, 490 A.2d 509 (1985).

The plaintiff argues that the trial court, by granting the defendants' motion, improperly applied the doctrine of res judicata to counts one and two of her original complaint that alleged that the defendants' actions in the prior collection proceeding constituted an abuse of process. The plaintiff contends that the allegations that supported her abuse of process claims should not have been precluded because they were not actually litigated in, or necessarily determined by, the default judgment in the prior collection action.

Before we address the plaintiff's argument concerning the preclusive effects, if any, of the prior collection action, we note that the terms res judicata and collateral estoppel refer to the concepts of claim preclusion or issue preclusion respectively. Both claim preclusion and issue preclusion "express no more than the fundamental principle that once a matter has been fully and fairly litigated, and finally decided, it comes to rest." *State* v. *Ellis,* 197 Conn. 436, 465, 497 A.2d 974 (1985). Although claim preclusion and issue preclusion

often appear to merge into one another in practice, analytically they are regarded as distinct. "[C]laim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits. . . . [I]ssue preclusion, prevents a party from relitigating an issue that has been determined in a prior suit." (Internal quotation marks omitted.) *Scalzo* v. *Danbury,* 224 Conn. 124, 128, 617 A.2d 440 (1992); see also *Aetna Casualty & Surety Co.* v. *Jones,* 220 Conn. 285, 303–304, 596 A.2d 414 (1991).[3]

The parties, both at trial and on appeal, clearly address the doctrine of issue preclusion.[4] Specifically, the plaintiff, having had a default judgment entered against her in the collection action, seeks to litigate certain factual issues in her later action for abuse of process, and the defendants, who had obtained the default judgment, assert that the judgment in the prior collection action precludes litigation of certain legal and factual issues in the plaintiff's subsequent action. The factual issues that the trial court evidently considered precluded were contained in counts one and two of the

[3] It has been held that in order for collateral estoppel to apply, the adversaries in the second action must have been party adversaries in the first action. *Parklane Hosiery Co.* v. *Shore,* 439 U.S. 322, 326–27, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979). Moukawsher, acting as an attorney for Whipple, clearly was not a party to the original suit, and yet is claiming the benefit of the default judgment in that action to preclude the relitigation of certain factual issues. In order for him to claim this benefit, he must to some extent share the same legal right as Whipple. *Aetna Casualty & Surety Co.* v. *Jones,* 220 Conn. 285, 303–307, 56 A.2d 414 (1991); *State* v. *Fritz,* 204 Conn. 156, 172, 527 A.2d 1157 (1987); see generally 1 Restatement (Second), Judgments § 29 (1982). None of the parties addressed the issue of whether mutuality is important to the application of issue or claim preclusion. Moreover, because resolution of this issue does not dispose of the plaintiff's first claim, we will not consider it.

[4] "The rule of claim preclusion prevents reassertion of the same claim even though additional or different evidence or legal theories might be advanced in support of it." F. James & G. Hazard, Civil Procedure (3d Ed. 1985) § 11.7, p. 597. We are not here concerned with the reassertion of the same claim.

plaintiff's original complaint that alleged that the defendants were liable for injuries caused by their "legally wanton abuse of process." These issues are: (1) whether the defendants had sought costs and attorney's fees that the plaintiff was not obligated to pay under her lease; (2) whether the plaintiff had received proper notice of the order for the prejudgment remedy or the motion for a default judgment in the prior collection action; and (3) whether the defendants had intentionally sent these notices to the wrong address.

"Collateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was *actually litigated* and *necessarily determined* in a prior action between the same parties upon a different claim." (Emphasis added.) *In re Juvenile Appeal (83-DE),* 190 Conn. 310, 316, 460 A.2d 1277 (1983). " 'For an issue to be subject to collateral estoppel, it must have been *fully and fairly litigated in the first action.* It also must have been actually decided and the decision must have been necessary to the judgment.' " (Emphasis added.) *Virgo* v. *Lyons,* 209 Conn. 497, 501, 551 A.2d 1243 (1988); see also *Ashe* v. *Swenson,* 397 U.S. 436, 445, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970); *State* v. *Hope,* 215 Conn. 570, 584, 577 A.2d 1000 (1990), cert. denied, 498 U.S. 1089, 111 S. Ct 968, 112 L. Ed. 2d 1054 (1991).[5]

An issue is *"actually litigated"* if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. (Emphasis added.) 1 Restatement (Second), Judgments § 27, comment (d) (1982). An issue is *necessarily determined* if, "in the

---

[5] Our treatment of collateral estoppel tracks the language of the Restatement, which provides: "When an issue of fact or law is actually litigated *and* determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." (Emphasis added.) 1 Restatement (Second), Judgments § 27 (1982).

absence of a determination of the issue, the judgment could not have been validly rendered." F. James & G. Hazard, Civil Procedure (3d Ed. 1985) § 11.19. If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action. Findings on nonessential issues usually have the characteristics of dicta. 1 Restatement (Second), Judgments § 27, comment (h) (1982).

The prior collection action was initiated against the plaintiff for legal fees and costs incurred in the summary process action. Although a judgment of default was entered against the plaintiff for her failure to appear in the collection action, it is less than clear what issues, if any, were "actually litigated" or "necessarily determined" in that action. If the presence of both parties is a necessary condition for an issue to be "actually litigated" for the purposes of issue preclusion, then the default judgment in the collection action should not operate to preclude any factual or legal issues in the subsequent abuse of process action.

Whether a prior default judgment has issue preclusive effect in a subsequent action involving a different cause of action has not been settled by this court.[6] The Restatement adopts the position that "presence" of the parties is a necessary condition for a matter to be "actually litigated" for the purpose of issue preclusion. In the comments to the section on issue preclusion in the Restatement, it is stated that "[i]n the case of a judgment entered by confession, consent, or *default*, none

---

[6] Before the American Law Institute adopted and promulgated the Restatement (Second) of Judgments in 1980, we stated that "a judgment of a court having jurisdiction of the parties and of the subject matter operates as res judicata of the parties in the absence of fraud or collusion even if obtained by default, and is just as conclusive an adjudication between the parties of whatever is essential to support the judgment as when rendered after answer and complete trial." *Slattery* v. *Maykut*, 176 Conn. 147, 157, 405 A.2d 76 (1978).

of the issues is actually litigated." (Emphasis added.) 1 Restatement (Second), Judgments § 27, comment (e) (1982). Professors James and Hazard, two prominent supporters of the Restatement, state "if a defendant over whom jurisdiction has been obtained defaults of appearance or fails to plead or otherwise defend, nothing is put in issue save possibly the facts needed to give the court jurisdiction over the subject matter. No other matter or point, then, becomes binding on the parties in later actions upon different claims." F. James & G. Hazard, supra, § 11.17.[7]

The Restatement's position that a default judgment is incapable of generating issue preclusion is, however, at odds with many courts that have held that default judgments are conclusive of the issues determined by such a judgment. Annot., The Doctrine of Res Judicata as Applied to Default Judgments, 77 A.L.R.2d 1410, 1419 ("the general rule is that a default judgment is just as conclusive as an adjudication between the parties of whatever is essential to support the judgment as one entered after answer and contest"). Federal courts, however, seem to have endorsed the Restatement's position. 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure (1981 and Sup. 1993) § 4442 n.3; but see *Brown* v. *Kenron Aluminum & Glass Corporation,* 477 F.2d 526 (8th Cir. 1973). Similarly, academic commentary on this issue is divided. Cf. G. Hazard, "Revisiting the Second Restatement of

---

[7] The Restatement justifies its position concerning the issue preclusive effect of default judgments on the ground that there may be strategic reasons why a party may not seek to litigate a given issue. "The action may involve so small an amount [of money] that litigation of the issue may cost more than the value of the lawsuit. Or the forum may be an inconvenient one in which to produce the necessary evidence or in which to litigate [the matter] at all. . . . [I]f preclusive effect were given to issues not litigated, the result might serve to discourage compromise, to decrease the likelihood that the issues in an action would be narrowed by stipulation, and thus to intensify litigation." 1 Restatement (Second), Judgments § 27, comment (e) (1982).

Judgments: Issue Preclusion and Related Problems,''
66 Corn. L. Rev. 564, 574–86 (1981); A. Vestal, "The
Restatement (Second) of Judgments: A Modest Dis-
sent," 66 Corn. L. Rev. 464, 472–97 (1981).

The Restatement's requirement that an issue be
"actually litigated" embodies the important concern
that the parties be cognizant of and interested in an
issue before they are precluded from litigating it.[8]
Adherence to this requirement, however, should not
demand that in all circumstances a default judgment
should mechanically be deprived of any issue preclusive
effect. Such a demand would make inflexible the doc-
trine of issue preclusion, which we have noted " 'must
be set in a practical frame and viewed with an eye to
all the circumstances of the proceedings.' *Sealfon* v.
*United States,* 332 U.S. 575, 579 [68 S. Ct. 237, 98 L.
Ed. 180 (1948)]." *State* v. *Aparo,* 223 Conn. 384, 390,
614 A.2d 401 (1992), cert. denied,    U.S.    , 113
S. Ct. 1414, 1415, 122 L. Ed. 2d 785 (1993).

Although not every default judgment should have the
same issue preclusive effect as an actual adjudication
between the present parties, in the interest of judicial
economy and repose for litigants, we envision some cir-
cumstances where it would be appropriate to give issue
preclusive effect to a default judgment. We have previ-
ously noted, after addressing the scope of issue and
claim preclusion, that the appropriate inquiry with
respect to both types of preclusion is whether the party
had an *"adequate opportunity* to litigate the matter in

---

[8] Elsewhere in the Restatement it is stated: "It is true that it is some-
times difficult to determine whether an issue was actually litigated; even
if it was not litigated, the party's reasons for not litigating in the prior action
may be such that preclusion would be appropriate. But the policy consider-
ations outlined above weigh strongly in favor of nonpreclusion, and it is
in the interest of predictability and simplicity for such a result to obtain
uniformly." 1 Restatement (Second), Judgments § 27, comment (e) (1982).

the earlier proceeding . . . ." (Internal quotation marks omitted.) *State* v. *Ellis,* supra, 464–65 n.22, quoting D. Currie, "Res Judicata: The Neglected Defense," 45 U. Chi. L. Rev. 317, 342 (1978). Our decision in *Ellis* indicates that had there been a full and fair opportunity to litigate issues and such issues were necessary to a default judgment, that judgment should put to rest subsequent litigation of all issues necessary for the rendering of the default judgment.

Under the circumstances of this case, it is unclear whether the prior collection action afforded the plaintiff a full and fair opportunity to litigate the issues that the trial court later precluded from litigation with respect to the plaintiff's claims of abuse of process. The defendants maintain that the hearing on the plaintiff's motion to open the default judgment pursuant to General Statutes § 52-212 provided this full and fair opportunity to contest the issues in question and that these issues were actually litigated and necessarily determined. Although the plaintiff's motion and the argument thereon did address several issues subsequently raised in her abuse of process action, it is unclear whether the trial court's ruling on her motion to open in the collection action gave preclusive effect to the issues argued during the hearing on that motion.[9] A trial court has the discretion to open a default judgment if the moving party shows that a "reasonable

---

[9] In her motion to open and set aside the default judgment, the plaintiff asserted that there was no legal basis for Whipple's claim for attorney's fees. She argued that, even though her lease with Whipple provided for attorney's fees in the event that an eviction action was brought, the lease had been terminated before any obligation to pay legal fees had been incurred. She also argued in her motion that she had good cause for not appearing because she did not receive notice of the collection action until June 29, 1987, after the default judgment had been entered.

The trial court, *Flanagan, J.,* agreed to hold a hearing on the plaintiff's motion. During the hearing, she again argued that Whipple had no legal basis for collecting the attorney's fees and that the notice provided by Whipple was inadequate. "I believe that there's a good defense, at least partly,

cause, or that a good cause of action or defense in whole or in part existed at the time of the rendition of the judgment . . . and that the plaintiff or defendant was prevented by mistake, accident or other reasonable cause from prosecuting the action or making the defense." General Statutes § 52-212. The trial court's ruling in the collection action did not, however, indicate on what basis it denied the plaintiff's motion.[10] We cannot say, therefore, that she was afforded a full and

to part of the claims. I refer specifically—I believe Mr. Moukawsher's complaint asks for attorney fees for collecting his attorney's fees. I don't think that's legal, Your Honor."

On the issue of notice, the plaintiff claimed that she "certainly at least did not get notice that judgment had entered or that they were trying to get judgment against her until after it had entered."

Moukawsher responded to the plaintiff's claims that the attorney's fees were improper and that the notice was defective. Moukawsher specifically stated that the written lease had provided for such fees in the case of eviction. Moukawsher, in response to the plaintiff's claim that notice was improper, noted that the plaintiff had been served at her usual place of abode. He also stated: "She alleges that the only notice she received was this notice of judgment. This notice of judgment was sent to the same address that the motion for default for failure to appear was sent, where the papers were served. There was also record notice. The attachment was filed in the land records in the town of Groton. So, there's every conceivable notice in this case. It can't be any mistake of the defendant to claim that she did not know of the action. She was well aware of it."

The trial court then asked several questions of the parties concerning, among other things, the issue of notice of the attachment of the mobile home, the filing of attachment in the land records, and the notice of the motion for default. The court inquired about how such notices were sent; it does not appear, however, that there was a resolution of the question of whether such notices were adequate.

[10] Generally, orders concerning opening a judgment are not regarded as final judgments to which an aggrieved party has a right to appeal. *Solomon* v. *Keiser*, 212 Conn. 741, 747, 562 A.2d 524 (1989). Because the trial court's ruling in this case on the motion to open the default judgment was not appealable, the plaintiff should not have been precluded from relitigating whatever issues were addressed in that motion. See 1 Restatement (Second), Judgments § 28 (1) (1982). Also of concern is the fact that the plaintiff may have had a heavier burden in proving certain matters during the motion to open than she would have had at trial. 1 Restatement (Second), Judgments § 28 (4) (1982).

fair opportunity to explore the factual issues she later sought to litigate in her abuse of process claims. Nor can we conclude that the default judgment in the collection action "necessarily determined" all of the issues that were later precluded. See 1 Restatement (Second), Judgments § 27, comment (d) (1982). We conclude that the court misapplied the doctrine of res judicata and improperly granted the defendants' motion for summary judgment.

The defendants nevertheless argue even if the factual issues that the plaintiff attempted to relitigate in her abuse of process action may not have been properly precluded, the issues raised by the plaintiff's allegations in the first two counts of her complaint did not, as a matter of law, allege a claim for abuse of process. Abuse of process occurs when someone uses "a legal process against another in an improper manner or to accomplish a purpose for which it was not designed." *Mozzochi* v. *Beck*, 204 Conn. 490, 494, 529 A.2d 171 (1987); *Vargo* v. *Pareles*, 137 Conn. 663, 667, 81 A.2d 112 (1951); see also 3 Restatement (Second), Torts § 682 (1977). Abuse of process is not an undefined cause of action; the fact that there existed "an incidental motive of spite or an ulterior purpose of benefit to the defendant" is not sufficient to constitute a cause of action for abuse of process. *Mozzochi* v. *Beck*, supra.[11] Because the trial court, however, did not specifically make any determination as to whether there were any genuine issues as to any material fact and instead predicated its decision solely on the ground of collateral estoppel, we reverse the trial court's judgment as to the abuse of process counts in the plaintiff's original complaint, reinstate those counts, and remand the matter to the trial court for further proceedings.

[11] Moreover, as we recognized in *Mozzochi* v. *Beck*, 204 Conn. 490, 495, 529 A.2d 171 (1987), we must be wary in applying abuse of process determinations to attorneys not to create a " 'chilling and inhibitory effect on would-be litigants of justiciable issues.' "

## II

The plaintiff next claims that the trial court improperly granted the defendants' motion to exclude certain evidence that the defendants had acted fraudulently to prevent her from receiving notice of the collection action in order to procure a default judgment. We disagree.

The facts relevant to this claim are as follows. At the outset of the trial on the amended complaint, the defendants moved to exclude evidence and testimony concerning issues that they claimed had been previously litigated in the prior collection action. The evidence offered by the plaintiff was purported to address specifically the questions of whether improper notices had been intentionally sent to her and whether additional costs and attorney's fees that had been sought in the collection action against her were proper. The trial court granted the defendants' motion to exclude the evidence on the basis that those issues to which it related were precluded by collateral estoppel. At several points during the trial, nonetheless, the plaintiff attempted to introduce testimony concerning those issues. The defendants objected to such testimony, and the trial court uniformly sustained their objections.

The plaintiff argues that because collateral estoppel applies only in the absence of fraud, the trial court improperly precluded evidence regarding the defendants' behavior in intentionally providing defective notice of the collection action because that conduct, she claims, was fraudulent. Although a party clearly cannot utilize res judicata or collateral estoppel when it has committed fraud; *Slattery* v. *Maykut*, 176 Conn. 147, 157, 405 A.2d 76 (1978); the issue of whether the defendants had acted fraudulently in providing defec-

tive notice to the plaintiff during the course of the prior action bears no relevance to the resolution of the claims presently advanced by the plaintiff.

The plaintiff's amended two count complaint that went to the jury alleged, in count one, that the defendants' actions in removing and selling her mobile home violated § 42-110b (a) of CUTPA, and in count two, that Whipple's negligence in removing and selling her mobile home caused injury to the plaintiff. The plaintiff has not challenged the validity of the jury's verdict finding no CUTPA violation by Whipple. The trial court set aside the jury's CUTPA verdict against Moukawsher for reasons other than evidentiary insufficiency. See part III of this opinion. The plaintiff has similarly not challenged the jury's verdict finding Whipple liable for negligence and assessing damages at $10,000. On this record, we need not review the propriety of the evidentiary rulings at trial, because the plaintiff has not shown how she was injured by them.

## III

The plaintiff finally claims that the trial court improperly set aside the verdict in her favor on her claim for damages that arose out of the Moukawsher's alleged violation of § 42-110b of CUTPA. The plaintiff argues that Moukawsher, as a provider of legal services for the plaintiff's party opponent, was liable under CUTPA for the damage he caused to her mobile home during his representation of Whipple in various aspects of the eviction and collection actions. We disagree.

The plaintiff's CUTPA claim is contained in count one of her amended complaint that alleges: (1) the defendants' removal and sale of the plaintiff's mobile home caused substantial injury to the plaintiff; and (2) the defendants failed to provide her with notice twenty days before the sale of the mobile home and conducted the sale in a manner that was not commercially

reasonable, as required by § 52-356a. After the jury found against Moukawsher on the CUTPA claim, he moved to set aside the verdict as being contrary to the law and against the evidence. The trial court granted Moukawsher's motion and concluded that as a matter of law CUTPA does not provide a cause of action against an attorney who represented a plaintiff's adversary in a prior action.

Section 42-110g (a) of CUTPA provides in part: "Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action. . . . Proof of public interest . . . shall not be required . . . ." General Statutes § 42-110b (a) provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." The act defines trade or commerce as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state." General Statutes § 42-110a (4).

The plaintiff argues that because § 42-110g (a) permits a private cause of action to "[a]*ny person* who suffers *any ascertainable loss* of money or property, real or personal," CUTPA affords her a cause of action against Moukawsher. (Emphasis added.) The plaintiff asserts that Moukawsher, in using his position in commerce as a provider of legal services, caused harm to her while representing Whipple in the collection and summary process actions.[12] The plaintiff, in support of

---

[12] Since CUTPA's enactment in 1973, the only case that involves the issue of whether a private cause of action under CUTPA can be brought against an attorney was *Ivey, Barnum & O'Mara* v. *Indian Harbor Properties, Inc.*, 190 Conn. 528, 461 A.2d 1369 (1983). In that case, we declined to allow

her claim, suggests that the legislative history of § 42-110g indicates that the scope of available private causes of action under CUTPA is broad enough to encompass her claim against Moukawsher.

In 1973, when CUTPA was first enacted, the predecessor to § 42-110g contained language that limited standing to "[a]ny person who purchases or leases goods or services . . . ." Public Acts 1973, No. 73-615, § 7. In 1979, however, the legislature amended the act, deleting all references to "purchasers, sellers, lessors, or lessees." Public Acts 1979, No. 79-210, § 1. The plaintiff maintains that this amendment broadened the scope of standing under the act so that privity with a defendant was no longer required to sustain a CUTPA claim.

The legislative history does in fact indicate that the 1979 amendment was intended to make privity less of an obstacle to recovery under CUTPA.[13] Arnold Feigen, assistant attorney general, noted in the debates concerning the amendment in the legislature that: "Section 1A of the proposed bill deletes references to the phrase 'such seller or lessor in the private section

a private cause of action under CUTPA to clients of a law firm who contested a law firm's suit to collect legal fees. Our decision rested on the ground that the plaintiff was unable to show damage sufficiently impacting the public. Id., 537. *Ivey, Barnum & O'Mara* has little applicability to the case before us. The law firm's actions in that case did not involve the performance of legal services on behalf of clients. Id., 531. Because that case was decided when General Statutes § 42-110g of CUTPA still contained a public impact requirement, we did not reach the issue of whether a lawyer is engaged in trade or commerce.

[13] The 1979 amendment; Public Acts 1979, No. 79-210, § 1; was considered by the House of Representatives to be "purely a housecleaning bill and . . . basically a series of technical amendments . . . ." 22 H.R. Proc., Pt. 10, 1979 Sess., pp. 3338–39, remarks of Representative Robert F. Frankel. In *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.,* 193 Conn. 208, 232–35, 477 A.2d 988 (1984), we addressed the issue of whether the 1979 amendment was indeed substantive and concluded that it did effect a change in the law.

of the Connecticut Unfair Trade Practices Act.' . . . The amendment will now allow a suit by any person who suffers any ascertainable loss of money or property. Numerous arguments have been raised in both state and federal courts that the plaintiff, in order to sue, must be a purchaser or a lessee of a seller or lessor. Clarification of Section 42-110g (a) is essential in order to avoid needless litigation of the particular phrase now found in the statute." Conn. Joint Standing Committee Hearings, General Law Committee, Pt. 4, 1979 Sess., p. 1159, remarks of Arnold Feigen, assistant attorney general, in support of Raised Committee Bill No. 7810.

Although § 42-110b (d) provides that " '[i]t is the intention of the legislature that this chapter be remedial and be so construed' ";[14] *Hinchliffe* v. *American Motors Corporation,* 184 Conn. 607, 615 n.4, 440 A.2d 810 (1981); and although "[p]rivate litigation under this act is essential and the [1979] proposal would ease the burden on private individuals and thus encourage private litigation"; 22 S. Proc., Pt. 8, 1979 Sess., p. 2575, remarks of Senator Steven C. Casey; it strains credulity to conclude that CUTPA is so formless as to provide redress to any person, for any ascertainable harm,

[14] General Statutes § 42-110b (b) provides that "the courts of this state shall be guided by interpretations given by the Federal Trade Commission and the federal courts . . . of the Federal Trade Commission Act . . . ." See also *Russell* v. *Dean Witter Reynolds, Inc.,* 200 Conn. 172, 179, 510 A.2d 972 (1986) ("that Federal Trade Commission . . . rulings and cases under the Federal Trade Commission Act . . . serve as a lodestar for interpretation of the open-ended language of CUTPA").

The Federal Trade Commission Act, 15 U.S.C. 45 (a) (1), does not expressly provide for a private cause of action, nor has any federal court implied such an action. See *American Airlines* v. *Christensen,* 967 F.2d 410 (10th Cir. 1992). Because we decide the issue of the plaintiff's standing to sue Moukawsher by examining the scope of General Statutes § 42-110g (a), CUTPA's private cause of action provision, resort to interpretations given by the Federal Trade Commission and the federal courts of the Federal Trade Commission Act are unnecessary.

caused by any person in the conduct of any "trade" or "commerce."[15] Although privity, in the traditional

[15] A private cause of action can arise only if the harm caused to the plaintiff arose from another person's "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes § 42-110b (a). The plaintiff must therefore show that the actions of Moukawsher, even if unfair and deceptive, were the conduct of "trade" or "commerce" under the act.

In *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo,* 190 Conn. 510, 461 A.2d 938 (1983), we addressed the issue of whether providing legal services constitutes "the conduct of any trade or commerce." *Heslin* focused on whether CUTPA enabled the commissioner of the consumer protection agency to issue an investigatory order to a law firm regarding the firm's advertising practices. Although in *Heslin* we applied CUTPA to the advertising practices of a law firm, we recognized that "[w]e need not in this case decide whether every provision of CUTPA permits regulation of every aspect of the practice of law by every member of the bar of this state." Id., 520–21. *Heslin* therefore did not address the issue of whether CUTPA applies to a private action brought by someone who was allegedly harmed by the actions of an attorney in representing the plaintiff's party opponent in an adversarial setting.

It is unclear whether the language of § 42-110b (a) makes the professional representation of a party opponent in litigation the conduct of "trade" or "commerce." The acts CUTPA defines as a trade or commerce include "the distribution of any services." General Statutes § 42-110a (4). Whether the actions of Moukawsher were a service is unclear. It has been held that there exists, at least in the practice of law, a distinction between the commercial and noncommercial aspects of the profession; based on such a distinction, a consumer protection statute was not applied to the noncommercial aspects of lawyering. *Short* v. *Demopolis,* 103 Wash. 2d. 52, 61, 691 P.2d 163 (1984); *Quinn* v. *Connelly,* 63 Wash. App. 733, 821 P.2d 1256, review denied, 118 Wash. 2d 1028, 828 P.2d 563 (1992); *Demopolis* v. *Peoples National Bank,* 59 Wash. App. 105, 119, 796 P.2d 426 (1990); see also note, "Washington Lawyers Under the Purview of the State Consumer Protection Act—The 'Entrepreneurial Aspects' Solution—*Short* v. *Demopolis,*" 60 Wash. L. Rev. 925 (1985).

It has been said, however, in the context of lawyer advertising, that "the belief that lawyers are somehow 'above' trade has become an anachronism . . . ." *Bates* v. *State Bar of Arizona,* 433 U.S. 350, 371–72, 97 S. Ct. 2691, 53 L. Ed. 2d 810 (1977). We are not required, under the facts of the present case, to inquire into the distinction, if any, between those aspects of lawyering that are commercial and those that are not, or to decide whether the modern practice of law supports such a distinction. Rather, in this case we conclude that in a situation where a party to a lawsuit sues the adversary's lawyer, CUTPA does not provide a private cause of action.

contractual sense of an exchange of consideration between parties, may no longer be essential for standing under CUTPA, a claimant under CUTPA must possess at least some type of consumer relationship with the party who allegedly caused harm to him or to her. CUTPA was, after all, enacted by the legislature to "put Connecticut in the forefront of state consumer protection . . . ." 16 H.R. Proc., Pt. 14, 1973 Sess., p. 7324, remarks of Representative Howard A. Newman.

Notwithstanding the 1979 amendment to CUTPA's standing provision, important policy considerations inform the potential liability of an attorney to an adversary. Those considerations transcend CUTPA and its remedial intent. "Determining when attorneys should be held liable to parties with whom they are not in privity is a question of public policy." *Krawczyk* v. *Stingle,* 208 Conn. 239, 245, 543 A.2d 733 (1988), citing 3 F. Harper, F. James & O. Gray, Torts (2d Ed. 1986) § 18.6, p. 730. Providing a private cause of action under CUTPA to a supposedly aggrieved party for the actions of his or her opponent's attorney would stand the attorney-client relationship on its head and would compromise an attorney's duty of undivided loyalty to his or her client and thwart the exercise of the attorney's independent professional judgment on his or her client's behalf.[16]

---

[16] The disciplinary guidelines to our Rules of Professional Conduct are punctuated with exhortations that an attorney's loyalty to the client is to be undivided and unaffected by other interests that would impair the attorney's independent judgment. Rule 1.7 of the Rules of Professional Conduct sets forth the general rule on conflicts of interest in an attorney-client relationship, and subsection (b) states that "[a] lawyer shall not represent a client if the representation of that client may be materially limited . . . by the lawyer's own interests . . . ." The comments to Rule 1.7 also state, in relevant part, that "[l]oyalty is an essential element in the lawyer's relationship to a client"; that such loyalty is "impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the

In other settings we have cautioned against providing an access to damages to a plaintiff adversely affected by the performance of legal services on behalf of someone whose interests were adverse to the plaintiff's. In *Mozzochi* v. *Beck,* supra, 495, we addressed whether "an attorney may be sued for misconduct by those who have sustained a special injury because of an unauthorized use of legal process." Although we concluded that a cause of action for abuse of process could be brought against an attorney, we noted that "[i]n permitting such a cause of action, we must, however, take care 'not to adopt rules which will have a chilling and inhibitory effect on would-be litigants of justiciable issues.' " Id. In *Mozzochi,* we therefore sought to avoid any rule that would "interfere with the attorney's primary duty of robust representation of the interests of his or her client." Id., 497.

Similarly, in *Krawczyk* v. *Stingle,* supra, 246, we held that "an attorney [could not] be held liable to third parties if, due to the attorney's delay, the testator did not have an opportunity to execute estate planning documents prior to death." We noted that "[a] central dimension of the attorney-client relationship is the attorney's duty of '[e]ntire devotion to the interest of the client.' " Id., citing G. Sharswood, An Essay on Professional Ethics (5th Ed. 1896) p. 78. Moreover, we stated in the context of that case that "[f]ear of liability to potential third party beneficiaries would contravene the attorney's primary responsibility to ensure that the proposed estate plan effectuates the client's wishes and that the client understands the available options and the legal and practical implications of whatever course of action is ultimately chosen." *Krawczyk* v. *Stingle,* supra, 246–47.

client because of the lawyer's other responsibilities or interests"; and that "[t]he lawyer's own interests should not be permitted to have adverse effect on representation of a client."

Imposing liability under CUTPA on attorneys for their representation of a party opponent in litigation would not comport with a lawyer's duty of undivided loyalty to his or her client. This consideration compels a conclusion that the trial court properly determined that the plaintiff did not have the requisite relationship with Moukawsher to allow her to bring suit against him under § 42-110g of CUTPA. Consequently, the plaintiff cannot prevail on her final claim.

The judgment of the trial court is reversed in part and affirmed in part, and the matter is remanded to the trial court for further proceedings.

In this opinion PETERS, C. J., NORCOTT and KATZ, Js., concurred.

BERDON, J., concurring. I write separately to clarify two points. First, it should be noted that our decision in part II of the opinion—that we need not review the propriety of the evidentiary rulings at trial because the plaintiff failed to show how she was injured by them—does not affect the plaintiff's ability to introduce such evidence at trial in support of her claim for abuse of process. The trial court excluded evidence that the defendants had acted fraudulently to prevent the plaintiff from receiving notice of the collection action in order to procure a default judgment. This evidence may be relevant as to whether the defendants are liable for abuse of process. Our holding in part II should not be relied upon as a basis for its exclusion. As the majority opinion points out, abuse of process occurs when a person uses " 'a legal process against another in an *improper manner* or to accomplish a purpose for which it was not designed.' " (Emphasis added.) *Mozzochi* v. *Beck,* 204 Conn. 490, 494, 529 A.2d 171 (1987).

Second, the legislature put to rest any claim that privity is required under CUTPA when it adopted No.

79-210 of the 1979 Public Acts, which amended General Statutes § 42-110g (a).[1] See *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.,* 193 Conn. 208, 228 n.27, 477 A.2d 988 (1984). Simply put, "privity" is no longer required for a CUTPA action.

Nevertheless, the majority states that the 1979 amendment "was intended to make privity *less* of an obstacle to recovery under CUTPA." (Emphasis added.) The majority also states that "privity, in the traditional contractual sense of an exchange of consideration between parties, *may* no longer be essential for standing under CUTPA . . . ." (Emphasis added.) This language is bound to cause confusion. Finally, the majority now seems to have added a new requirement by requiring that "a claimant under CUTPA must possess at least some type of *consumer relationship* with the party who allegedly caused harm to him or to her." (Emphasis added.) The statutory scheme is devoid of any "consumer relationship" requirement for a CUTPA action. Furthermore, the majority does not define this new judicial gloss.

Nevertheless, I agree that under the facts of this case, the attorney defendant would not be liable under CUTPA. Although an attorney is not exempt from CUTPA; *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo,* 190 Conn. 510, 461 A.2d 938 (1983); we made it clear in *Heslin* that we were not deciding "whether every provision of CUTPA permits regulation of every aspect of the practice of law . . . ." Id., 520.

---

[1] General Statutes § 42-110g (a) provides in part: "Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action in the judicial district in which the plaintiff or defendant resides or has his principal place of business or is doing business, to recover actual damages. . . ."

We have held that it is important not to "interfere with the attorney's primary duty of robust representation of the interests of his or her client." *Mozzochi* v. *Beck,* supra, 497. This public policy consideration requires us to hold that CUTPA covers only the entrepreneurial or commercial aspects of the profession of law. The noncommercial aspects of lawyering— that is, the representation of the client in a legal capacity—should be excluded for public policy reasons. See *Krawczyk* v. *Stingle,* 208 Conn. 239, 246, 543 A.2d 733 (1988).

Accordingly, I concur in the judgment of the court.