[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Both the plaintiff Arthur Field and the defendant James Kearns are attorneys and members of the Connecticut bar. In this action they have each filed a Motion for Summary Judgment. The court also permitted the Connecticut Civil Liberties Union Foundation to file a memorandum of law supporting the defendant's motion and opposing the plaintiff's motion.
THE FACTS
The plaintiff, Arthur Field, represented Wendy Wirtz in a real estate closing in 1989. In 1991 Wendy Wirtz became involved in a foreclosure action on the same real estate. Thereafter in February 1992, she retained James Kearns to represent her in a claim for malpractice against Arthur Field, her former lawyer. On February 4, 1992, Kearns wrote Field a letter requesting that Field notify his malpractice carrier. There ensued correspondence between Field and Kearns which could most charitably be described as unpleasant. Field declined to notify his carrier and refused to provide any information to Kearns about what company provided professional liability coverage for him.
Kearns then issued a writ of summons and a complaint alleging malpractice against Field for Field's actions in representing Ms. Wirtz. The action was returned to court with a return date of March 1992. On April 27, 1992, Kearns filed a complaint against Field with the Statewide Grievance Committee alleging that Field was obstructing the judicial process by failing to appear in the pending lawsuit of Wirtz v. Field and by failing to confirm that CT Page 4006 Field's malpractice carrier had been notified of the existence of Ms. Wirtz's claim. Field responded to the inquiry of the local panel of the Statewide Grievance Committee by letter on May 29, 1992 and, among other responses, enclosed a copy of the declarations page from his lawyers' professional liability policy with American Home Assurance Company of whom Kronholm Keeler, Inc., was the authorized representative. On June 1, 1992, Kearns filed a withdrawal of the first civil action because of a defect in the service of process, and reinstituted the same claims in a new lawsuit with new service of process with return date of June 23, 1992.
On June 17, 1992, Kearns sent a copy of the complaint in the new civil action to the claims department of Kronholm Keeler, agent for Field's liability carrier. Field filed an appearance in the new civil action which remains currently pending in the Superior Court in Bridgeport.
On June 29, 1992, the local panel of the Statewide Grievance Committee found probable cause that Field had violated several of the Rules of Professional Conduct. A hearing was held before a reviewing committee of the Statewide Grievance Committee on October 8, 1992. On January 21, 1993, the Statewide Grievance Committee found that Field's conduct did not rise to the level of an ethical violation, and the complaint was dismissed.
THE PLAINTIFF'S CLAIMS
In his Amended Complaint, the plaintiff claims that (First Count) the filing and pursuit of the grievance by Kearns constituted an abuse of legal process; (Second Count) the failure of Kearns to withdraw the grievance when he withdrew the lawsuit because of defective service was also an abuse of process; (Third Count) the filing, pursuit of, and failure to withdraw the grievance constituted vexatious litigation; (Fourth Count) the preparation and pursuit of the pending civil suit filed by Wendy Wirtz against Field was negligent; (Fifth Count) by mailing a copy of the complaint in the civil case or the grievance complaint to Kronholm Keeler, Kearns tortiously interfered with plaintiff's business relationship with the insurance carrier; (Sixth Count) the publishing of the complaint in the civil suit or the grievance constituted libel; and (Seventh Count) the acts of Kearns violated CUTPA.
Kearns unsuccessfully moved to strike all counts of the CT Page 4007 complaint. He then filed an answer denying the major allegations. He now moves for summary judgment (Doc. #132 dated July 26, 1993) alleging that no material facts are in issue. Field filed papers opposing defendant's Motion for Summary Judgment (Doc. #135 on August 2, 1993). Field then filed a Motion for Summary Judgment as to Liability (Doc. #141 dated August 20, 1993). The request for the CCLUF to appear and file a memorandum amicus curiae supporting defendant's position was filed on September 15, 1993 (Doc. #144) and granted by this court.
THE GRIEVANCE
The plaintiff claims that the filing and maintenance of the grievance by Kearns and Kearns' failure to withdraw it, or to supply correct information to the Statewide Bar Counsel or Statewide Grievance Committee constitutes abuse of process and vexatious litigation.
Communications made in connection with an ongoing judicial or quasi-judicial proceeding are absolutely privileged. Petyan v.Ellis, 200 Conn. 243, 252 (1986). This is true regardless of whether in another context the statements might be libelous per se or motivated by malice. Id. at 253.
Attorney disciplinary proceedings in Connecticut are judicial proceedings under the control and administration of the court. Inre Peck, 88 Conn. 447, 457 (1914); Statewide Grievance Committeev. Rozbicki, 211 Conn. 232, 238-39 (1989). The plaintiff claims that the initiation, maintenance, and failure to withdraw a complaint with the Statewide Grievance Committee may nevertheless be subject to claims of abuse of process or vexatious litigation if the elements of those causes of action are met. The defendant and amicus urge the court to adopt the position that since attorney disciplinary proceedings are so important to the judiciary's ability to maintain its integrity and administer justice, the absolute privilege which cloaks the contents of communications in a grievance proceeding should cover all acts by a complainant in prosecuting a grievance.
Addressing first the issues of maintaining or refusing to withdraw a grievance, the rules provide that once a complaint is filed, it is no longer in the complainant's power to withdraw it. The grievance panel to which the complaint is assigned "shall investigate each complaint to determine whether probable cause exists that the attorney is guilty of misconduct." Conn. P.B. CT Page 4008 § 27F(d). Once the matter is filed with the Statewide Bar Counsel, the complainant has no power to call a halt to the investigation or other proceedings[1]. See, e.g. Statewide Grievance Committee v.Rozbicki, supra, at 239. Rather, "the court controls the situation and procedure . . . as the interests of justice may seem to it to require," In re Peck, supra, at 452, and the complainant has no power to direct or control the proceeding. Id. at 458. Thus all the defendant could do once the complaint was filed was to communicate with the committee if he no longer felt he wanted to pursue the grievance. Since such communications are absolutely privileged, the Second Count, which alleges that the defendant failed to withdraw the grievance, must fail.
As to the First Count, the plaintiff alleges not just that false or malicious communications were made by the defendant to the committee, but that the act of filing the complaint with the Statewide Bar Counsel constitutes an abuse of process.
Elements of a cause of action for abuse of process are that "the defendant used a legal process against another in an improper manner or to accomplish a purpose for which it was not designed."Vargas v. Pareles, 137 Conn. 663, 667 (1951).
In Connecticut, a cause of action will lie for abuse of legal process against an attorney "by those who have sustained a specialinjury because of an unauthorized use of legal process". Mazzochiv. Beck, 204 Conn. 490, 495 (1987) (emphasis supplied).
Unless the plaintiff can allege and prove "specific misconduct intended to cause specific injury outside of the normal contemplation of private litigation", Id. at 497, this cause of action will fail. Also, he must show that the improper purpose was a primary rather than incidental intention of the defendant. 3 Restatement (Second) of Torts, § 682, Comment b; Mazzochi v. Beck,
supra, at 497.
Field has alleged that the legal process initiated by Kearns — filing the grievance complaint with the Statewide Bar Counsel — was for the purpose of "annoying, harassing and injuring Field and causing him damage in the community . . . . and caus[ing] emotional distress to Field." Amended Complaint, para. 15 and 16. This is not the kind of specific injury that our case law requires to support a cause of action for abuse of process. Moreover in opposition to the defendant's Motion for Summary Judgment, the plaintiff has produced no proof of any damage, only his own CT Page 4009 conclusory affidavit that he "has suffered severe economic and emotional injury." Plaintiff's Affidavit in Support of Objection to [Defendant's] Motion for Summary Judgment (Doc. #137) dated July 27, 1993, para. 25. This general statement, without more, is not the kind of competent evidence which will support a finding of the existence of a material fact in dispute.
The plaintiff goes further to claim that Kearns filed the grievance complaint "to coerce Field to appear in the Wirtz suit and to obtain the identity of Field's malpractice carrier, both of which goals he accomplished." Amended Complaint (Doc. #104) para. 15. The defendant in his affidavit admits that compelling these actions by Field were among the reasons for filing the grievance complaint. Defendant's Affidavit in Support or Motion for Summary Judgment (Doc. # 133) dated July 26, 1993, paras. 7, 8, 9, 10, 11, 12, 13 and 15. The question is whether these undisputed facts constitute evidence of the use of legal process "primarily to accomplish a purpose for which it was not designed." Mazzochi v.Beck, supra, at 497 (emphasis in original).
The purpose of attorney disciplinary proceedings is to preserve the courts "from the official ministration of persons unfit to practise [sic] in them". Ex Parte Wall, 107 U.S. 265, 288, § 2 S.Ct. 569, 27 L.Ed. 522 (1883); Heslin v. Conn. Law Clinic ofTrantolo Trantolo, 190 Conn. 510, 524 (1983). The system is designed to protect the court. Grievance proceedings are not designed, in the main, to assist in the prosecution of a civil action such as the one filed by Wendy Wirtz. The court does not conclude that any incidental benefit to Ms. Wirtz or Attorney Kearns on her behalf necessarily implies a motive to use the grievance procedure for an improper purpose or one for which it was not designed. Rather, that presents an issue of fact as does the question of the primary reason for the filing of the instant grievance. Neither question can be decided on summary judgment.
Concluding that the supporting papers leave open a disputed issue of material fact as to whether the filing of a grievance in the hopes of coercing the respondent to behave in a way favorable to the complainant, if that were found to be the complainant's primary motivation, is a purpose for which the disciplinary process was not designed, the court turns to the important issue of absolute privilege.
Amicus and the defendant urge the court to find that the filing of a complaint initiating the grievance process, regardless CT Page 4010 of any ulterior purpose, is absolutely privileged and cannot be the basis for an action for abuse of process, vexatious litigation, or any other civil cause of action. The plaintiff asserts that theact of initiating a legal process, as opposed to the contents of communications, is not privileged, citing DeLaurentis v. New Haven,220 Conn. 225, 266 (1991) (statements not actionable but action in instituting suit on baseless charges is actionable).
This court finds that the public policy of protecting the courts and the public from unethical and unprofessional attorneys is so strong that there is absolute immunity for the complainant in filing or otherwise causing the institution of attorney disciplinary proceedings.
Our courts have frequently spoken of the seriousness with which the integrity of the judicial process is regarded. In rePeck, supra; it is such that there exists a long history of the court undertaking investigations and formal inquiries into the character and fitness of attorneys regardless of whether the complaint comes from an official source, Fairfield County Bar v.Taylor, 60 Conn. 11 (1891), or whether the complainant might lack impartiality. In re Peck, supra, at 457-58.
While the issue of immunity for the act of filing a bar grievance has not been addressed in Connecticut, it has been addressed in a number of other jurisdictions which have found that the doctrine of absolute immunity applies. See, Toft v. Ketchum,18 N.J. 280, 113 A.2d 671 (1955); Kerpelman v. Bricker,23 Md. App. 628, 329 A.2d 423 (1974); Stone v Rosen, 348 So.2d 387
(Fla.App. 3d Dist. 1977); Netterville v. Lear Siegler, Inc., 397 So.2d 1109
(Miss. 1981).
These decisions all recognize that competing interests are at stake. On the one hand exist concerns for injury to an attorney in defending improper or groundless charges and the danger or actual damage to the lawyer's reputation and economic interests if the proceedings become public knowledge. On the other hand is the policy of encouraging those with any knowledge of attorney misconduct to come forward with such information free from any fear of retribution or harassment by a vindictive respondent. This is especially important in light of the fact that an attorney can more easily than a lay person utilize the legal process, pro se if necessary, to file a civil action against the unlucky complainant. Connecticut's rules, perhaps recognizing that many grievances are filed without foundation, were recently changed to provide for CT Page 4011 summary dismissal of complaints that are insufficiently specific, duplicative, stale, or outside the scope of the ethics rules, among other things. Conn. P.B. § 27F(a)(2). These changes, newly enacted in 1994, help to protect attorneys from the inconvenience and effort of defending against baseless grievances.
Additional safeguards for attorneys who are the subject of false or malicious grievances exist through the well-settled procedure of keeping the complaint and investigation confidential unless and until there has been a finding of probable cause. Conn. P.B. § 27F(e); see, e.g., Stone v. Rosen, supra. Also if the complainant is an attorney, such as in the instant case, the Statewide Bar Counsel, the Statewide Grievance Committee or one of the local panels can institute disciplinary proceedings against a complainant who falsely and maliciously misuses the grievance process. See, e.g., Netterville v. Lear Siegler, Inc., supra.
There is an absolute duty imposed on members of the bar to report any instance of substantial professional misconduct to the appropriate attorney disciplinary authority. Rules of Professional Conduct 8.3(a). Such a rule merits a rule guaranteeing special protection for a complainant who has the responsibility of this reporting requirement. See, e.g., Kerpelman v. Bricker, supra.
The court is mindful that absolute immunity is not favored.Blakeslee Sons. v. Carroll, 64 Conn. 223, 234-35 (1994). Nevertheless extending the existing law of absolute immunity to cover the act of filing a complaint with Statewide Bar Counsel is well supported by the public policy of encouraging those with knowledge of attorney misbehavior, whether they be predisposed well or ill toward the respondent, to come forward with their information in the proper forum.
Accordingly, the defendant is entitled to summary judgment on the First, Second, and Third Count.
THE CIVIL ACTION
The content of statements in civil actions is likewise privileged. They cannot be the basis for a libel action. The publication to Field's carrier of the malpractice complaint does not defeat the privilege, since the malpractice carrier through its agent is connected with the issues in the judicial proceeding. SeeDeLaurentis v. New Haven, supra, at 265-66. Therefore, the defendant is entitled to judgment as a matter of law on the Sixth CT Page 4012 Count of the Amended Complaint.
As to the Fourth Count, the plaintiff claims that Kearns failed to act with due care in the preparation and filing of the Wirtz lawsuit. To recover Field must establish the existence of a legal duty owed to him by Kearns, and a breach of that duty. Shorev. Town of Stonington, 187 Conn. 147 (1982). Field has failed to allege, let alone prove by any competent evidence in his supporting papers, that Kearns owed any duty to Field. To the contrary, as a matter of law, no such duty is owed by one party's counsel in a lawsuit to the opposing party. See, e.g., Krawczyk v. Stingle,208 Conn. 239 (1988); Jackson v. R. G. Whipple, Inc., 225 Conn. 705
(1993). Nor will a cause of action lie for violation of Conn. Gen. Stat. § 42-110g, the Connecticut Unfair Trade Practices Act.Jackson v. Whipple, supra. The defendant is therefore entitled to summary judgment on the Fourth and Seventh Count.
What remains is the Fifth Count, alleging that Kearns tortiously interfered with the contractual relationship of Field and his liability insurance carrier. The plaintiff alleges that Kearns sent a copy of the grievance complaint and of the Wirtz v.Field complaint to the carrier's agent, which had the effect of embarrassing Field and altering "permanently to Field's detriment" the business relationship he formerly enjoyed with his carrier. There has been no competent evidence produced by Field to show that Kearns published the grievance to anyone. Kearns admits sending a copy of the malpractice complaint to Kronholm Keeler, Inc., the authorized agent of Field's carrier.
Connecticut case law recognizes a cause of action for intentional interference with business relations, as defined in 4 Restatement (Second) of Torts § 766 et seq. Blake v. Levy,191 Conn. 257 (1983).
To recover for intentional interference with performance of a contract or prospective contractual relation, the plaintiff must plead and prove that the act of the defendant caused a third person not to perform the contract, § 766, caused its performance to be more expensive or burdensome, § 766A, or caused a third person not to enter into the contract or not to continue the prospective relation, § 766B.
One must first assume that Field was not already under a duty to notify his carrier or its agent of the existence of a claim, much less a lawsuit.[2] Then one must assume the act of publishing CT Page 4013 a document of public record to Field's insurance carrier can, in any event, be the basis of a tortious interference claim as a matter of law.
But in his supporting papers in opposition to Defendant's Motion for Summary Judgment or in support of his own motion, Field has produced no evidence of any harm to his business relationship with his carrier or anyone else as a result of Kearns' actions. Field has failed to allege and failed to produce any competent evidence that his relationship to his carrier was changed in any adverse way by the actions of Kearns. Even if Kearns' actions were motivated by malice or a desire to compete unfairly with Field, Field has made no showing of any failed contract or harm of any pecuniary nature. Since proof on this element is wholly absent, defendant is entitled to judgment on the Fifth Count.
CONCLUSION
The Defendant's Motion for Summary Judgment is granted. The Plaintiff's Motion for Partial Summary Judgment is denied.
Patty Jenkins Pittman, Judge