In re Alan L. BOUCHER and Ann
Marie Boucher, Debtors.

**H.J. Bushka Lumber and
Millwork, Plaintiff,**

v.

**Alan L. Boucher, Defendant.**

**Bankruptcy No. 04–31946 LMW.
Adversary No. 04–3114.**

United States Bankruptcy Court,
D. Connecticut.

Dec. 23, 2005.

---

Eddi Z. Zyko, Esq., Middlebury, CT, for Plaintiff/Movant.

Alan L. Boucher, Naugatuck, CT, Pro Se Chapter 7 Debtor.

### MEMORANDUM OF DECISION AND ORDER RE: PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

LORRAINE MURPHY WEIL, Bankruptcy Judge.

The matter before the court is the above-captioned plaintiff H.J. Bushka Lumber and Millwork's ("HBLM") Motion For Default Judgment (Adv. Pro. Doc. I.D. No. 13, the "Motion")[1] pursuant to which HBLM seeks entry of judgment by default in the amount of $11,168.97 plus accumu-

---

1. Citations herein to the docket of this adversary proceeding appear in the following form: "Adv. Pro. Doc. I.D. No. ___." Citations here-

in to the docket of the above-captioned chapter 7 case appear in the following form: "Case Doc. I.D. No. ___."

lating interest as a nondischargeable debt against Alan L. Boucher ("Mr.Boucher") pursuant to Bankruptcy Code § 523(a)(2) [2] and vacatur of an avoidance order previously issued by this court. The court has jurisdiction over this adversary proceeding as a core proceeding within the purview of 28 U.S.C. §§ 157(b) and 1334 and that certain Order dated September 21, 1984 of the District Court (Daly, C.J.).[3]

## I. *PROCEDURAL BACKGROUND*

The above-referenced debtors (collectively, the "Debtors") commenced this joint chapter 7 case by the filing of a voluntary petition on April 23, 2004. (*See* Case Doc. I.D. No. 2.) The Debtors filed a complete set of schedules and a statement of financial affairs (included in Case Doc. I.D. No. 2, collectively, the "Schedules") with their petition. The Schedules reflect the following pertinent information: (1) the Debtors jointly own a fee simple interest in property located at 61 Red Maple Court, Naugatuck, Connecticut (the "Property") with a claimed fair market value of $214,000.00 and encumbrances totaling $219,179.00 (*see* Schedule A (Real Property)); (2) the Property is encumbered by three mortgages and several judgment liens, including a judgment lien held by HBLM (*see* Schedule D (Creditors Holding Secured Claims)); and (3) a state court

judgment (the "Judgment") in favor of HBLM against Mr. Boucher entered on January 28, 2002 in the Waterbury Superior Court (*see* Statement of Financial Affairs, item 4.a).

Pursuant to that certain Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines (Case Doc. I.D. No. 3), July 20, 2004 was established in this case as the bar date for filing complaints objecting to discharge or seeking a determination of nondischargeability. On May 27, 2004, the chapter 7 trustee filed a report of no distribution (Case Doc. I.D. No. 8) stating that no assets were available in the Debtors' respective estates for distribution to creditors. On June 8, 2004, the Debtors filed a motion to avoid judicial liens impairing exemption (Case Doc. I.D. No. 9, the "Avoidance Motion") targeting (among other liens) the lien (the "Lien") securing the Judgment. On July 14, 2004, an order (Case Doc. I.D. No. 13, the "Avoidance Order") entered granting the Avoidance Motion. The Debtors received their chapter 7 discharge on August 2, 2004. (*See* Case Doc. I.D. No. 16.)

On July 20, 2004, HBLM commenced this adversary proceeding against Mr. Boucher by filing the Complaint. The Complaint seeks (1) a determination of

---

**2.** HBLM does not cite to a particular Bankruptcy Code provision in either the complaint (Adv. Pro. Doc. I.D. No. 1, the "Complaint") or the Motion. However, based on the nature of the proceeding and the substance of the Complaint, it is clear that a determination of nondischargeability under Bankruptcy Code § 523(a)(2) is the relief sought. (*See* Complaint ¶¶ 3, 4.) Bankruptcy Code § 523(a)(2) states in pertinent part:

(a) A discharge ... does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(2) for money, property services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud . . . .

11 U.S.C.A. § 523(a)(2) (West 2005).

**3.** That order referred to the "Bankruptcy Judges for this District" *inter alia* "all proceedings arising under Title 11, U.S.C . . . . ."

nondischargeability with respect to the debt (the "Debt") that is merged into the Judgment; and (2) the vacatur of the Avoidance Order with respect to the Lien.[4] Mr. Boucher is *pro se* in this proceeding and has failed to plead or otherwise defend.[5] In response to a motion (Adv.Pro. Doc. I.D. No. 9) filed by HBLM on September 29, 2004, the Clerk entered a default (Adv.Pro.Doc. I.D. No. 11) against Mr. Boucher on October 1, 2004. Thereafter, HBLM filed the Motion supported by, among other things, an affidavit (included in Adv. Pro. Doc. I.D. No. 13)[6] and a copy of a certain Judgment Lien Certificate with respect to the Lien (*id.*). A hearing on the Motion on notice to Mr. Boucher was held on December 8, 2004. At the hearing, the court, citing *American Express Centurion Bank v. Truong (In re Truong)*, 271 B.R. 738 (Bankr.D.Conn. 2002), noted that the Affidavit failed to establish a prima facie case with respect to the Motion (12/8/04 Audio Record at 1:37:57 to 1:39:15)[7] and scheduled an evi-

dentiary hearing on December 28, 2004 on notice to Mr. Boucher (*see* Adv. Pro. Doc. I.D. No. 16).

At the evidentiary hearing (at which Mr. Boucher did not appear), counsel for HBLM argued that because a claim of fraud was raised in the state court complaint (the "State Court Complaint") in respect of the Judgment and was necessary to the Judgment, this court is precluded by the doctrine of collateral estoppel from relitigating the fraud issue raised under Bankruptcy Code § 523(a)(2)(A) (the "Fraud Issue"). (12/28/04 Audio Record at 11:11:38 to 11:12:17.) In support of that argument, HBLM entered into evidence (1) a certified copy of the "Judgement [sic] Worksheet—Civil" ("Plaintiff's Exhibit A"); (2) a certified copy of the state court summons in respect of the State Court Complaint and a certified copy of the State Court Complaint (collectively, "Plaintiff's Exhibit B"). At the conclusion of the hearing, the court took the matter under advisement. After due deliberation,

---

4. The Complaint also seeks an award of attorney's fees and costs. Because, for the reasons stated below, HBLM does not otherwise prevail on the Motion, it is (at best) premature to consider such an award. However, because a nondischargeability claim arises purely under federal law, attorney's fees will not be awarded to the prevailing party absent bad faith or harassment by the losing party. *See BankBoston, N.A. v. Sokolowski (In re Sokolowski)*, 205 F.3d 532, 535 (2d Cir.2000). Moreover, HBLM has not properly pled a claim for attorney's fees in the Complaint. A general demand for attorney's fees in the prayer for relief does not state a proper claim as required by the relevant procedural rules. *See* Fed. R. Bankr.P. 7008(b) ("A request for an award of attorney's fees shall be pleaded as a claim in a complaint, cross-claim, third party complaint, answer, or reply as may be appropriate."). *See also Hartford Police F.C.U. v. DeMaio (In re DeMaio)*, 158 B.R. 890, 892 (Bankr.D.Conn.1993) (Krechevsky, J.) ("Statements made in a *prayer* are insufficient to satisfy the requirement that attorney's fees be stated as a *claim*." (emphasis in original)).

5. The Debtors, however, are represented by counsel in the chapter 7 case.

6. That affidavit is attested to by Eric Z. Bushka (a principal of HBLM) and states that Mr. Boucher is not in the Armed Forces of the United States, is not an infant and is not incompetent because: (1) he runs a business in Naugatuck, Connecticut and "recently, sought to continue to do business with [HBLM];" (2) he owns a home in Naugatuck and resides there with his wife; and (3) "[h]e appears to be too old (e.g. fifties-sixties age range) and out of shape (e.g. overweight) to be a current member of the Armed Forces of the United States." (Affidavit ¶ 3.)

7. References to the audio record of the December 8, 2004 hearing appear in the following form: "12/8/04 Audio Record at ___." References to the audio record of the December 28, 2004 hearing appear in the following form: "12/28/04 Audio Record at ___."

the court is now prepared to issue this memorandum of decision.[8]

## II. *FACTUAL BACKGROUND*

Prior to the commencement of this case, HBLM commenced an action (the "State Court Action") against Mr. Boucher by return of the State Court Complaint to the Waterbury Superior Court. The State Court Complaint contained five counts: Count I—Breach of Contract; Count II—Failure To Pay for Bargained For/Sold/Delivered Goods; Count III—Unjust Enrichment; Count IV—Negligent Misrepresentation; and Count V—Fraud (the "Fraud Count"). (*See* Plaintiff's Exhibit B, State Court Complaint.) Incorporating by reference the prior paragraphs of the State Court Complaint, the Fraud Count alleged the following: "[Mr. Boucher] ... had a present intention to deceive [HBLM] as aforesaid.... [HBLM] was induced to and did reasonably rely upon ... [Mr. Boucher] as aforesaid.... Accordingly, [HBLM] was deceived, which proximately caused injury to [HBLM]." (Plaintiff's Exhibit B, State Court Complaint ¶¶ 69–71.) The Fraud Count incorporated by reference the following relevant paragraphs of the State Court Complaint:

3. On or about April 14, 2000 [Mr. Boucher] ... asked for an "in Store Charge Account" from [HBLM], which was accepted by [HBLM] based upon said [Mr. Boucher]'s personal representations that he was honest, trustworthy, paid his obligations on time and was financially able to do so, establishing a contract between [HBLM] and ... [Mr. Boucher] with the terms thereof delimit-

ed on all purchase invoices and statements—a copy of said terms is attached as Exhibit A and made part hereof as if printed here.

4. On divers times since said April 14, 2000, [HBLM] bargained for, sold and delivered goods, wares, materials or merchandise with and to ... [Mr. Boucher], who put the cost thereof on his said "In Store Charge Account".

. . . . .

7. The current balance on [Mr. Boucher]'s said "In Store Charge Account" is $6,529.22 with compound interest accruing thereupon and his last payment thereupon was made on November 1, 2000 with his check number 004245.

(Plaintiff's Exhibit B, State Court Complaint.) The prayer for relief in the State Court Complaint requested that the state court:

(a) Award to the plaintiff the actual damages suffered by it as proved at trial;

(b) Award punitive damages and interest as allowed by law;

(c) Award the plaintiff the costs of this action and its attorney's fees; and

(d) Grant such other and further relief as this Court deems just, proper, or equitable under the circumstances.

(*Id.* at 5.)

On January 11, 2001, the State Marshal served the relevant summons and State Court Complaint upon Mr. Boucher by leaving copies "at his usual place of abode" at the Property. (Plaintiff's Exhibit B.) Mr. Boucher did not appear or plead in the State Court Action and HBLM subsequently obtained entry of a default.[9] After

---

**8.** By an Order Offering Opportunity To Brief Issue entered on September 12, 2005, the court identified the collateral estoppel issue discussed at section V.A, *infra*, and afforded HBLM the opportunity to brief that issue.

(*See* Adv. Pro. Doc. I.D. No. 24.) HBLM did not file such a brief.

**9.** For the purposes of this memorandum, the court will assume that prior notice to Mr.

a hearing on damages in the State Court Action on January 28, 2002, the Judgment entered in favor of HBLM for $9,230.55 ($7,806.45 in principal, $374.10 in costs and $1,050.00 in attorneys' fees). (*See* Plaintiff's Exhibit A, Judgement Worksheet—Civil.) On February 13, 2002, HBLM filed the Lien against the Property. (Adv. Pro. Doc. I.D. No. 13, Exhibit A.)

On June 8, 2004, the Debtors filed the Avoidance Motion in the Chapter 7 proceeding claiming that the Lien impaired their homestead exemptions provided under Bankruptcy Code § 522(b)(2) and Section 52–352(t) of the Connecticut General Statutes. (*See* Case Doc. I.D. No. 9.) A bar date for objections to the Avoidance Motion was set for June 17, 2004 (Case Doc. I.D. No. 10) and notice was sent to the effected creditors, including HBLM. (*See* Case Doc. I.D. No. 11.) There were no objections to the Avoidance Motion.[10] On the Debtors' request (Case Doc. I.D. No. 12), the court entered the Avoidance Order on July 14, 2004. (*See* Case Doc. I.D. No. 13.) [11]

The Complaint seeks an order from this court vacating the Avoidance Order with respect to the Lien and declaring the Debt to be nondischargeable under Bankruptcy Code § 523(a)(2)(A) alleging that the Debt was incurred "by false pretenses, false representations and actual fraud for which [HBLM] received a Judgment in the Judicial District of Waterbury ..." (Adv. Pro. Doc. I.D. No. 1 at 1, ¶ 4).

Boucher of proceedings in the State Court Action in respect of the Judgment was in all respects adequate.

10. HBLM, through Attorney Zyko, was served (*see* Case Doc. I.D. No. 11) with a copy of the Avoidance Motion and a notice of the bar date for objections thereto, and did not file an objection.

## III. NONDISCHARGEABILITY/FRAUD

The Motion can be granted only if HBLM has established a prima facie case under Bankruptcy Code § 523(a)(2)(A). *See In re Truong*, 271 B.R. at 741–42. Bankruptcy Code § 523(a)(2)(A) excepts from discharge "any debt—for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—false pretenses, a false representation, or actual fraud ...." 11 U.S.C.A. § 523(a)(2) (West 2005). To prove a prima facie case under Bankruptcy Code § 523(a)(2)(A), HBLM must make the requisite showing with respect to the following elements: (1) Mr. Boucher made representations; (2) knowing them to be false; (3) with the intent and purpose of deceiving HBLM; (4) upon which representations HBLM actually and justifiably relied; and (5) which proximately caused the alleged loss or damage sustained by HBLM. *See AT & T Universal Card Services v. Mercer (In re Mercer)*, 246 F.3d 391, 403 (5th Cir.2001) (*en banc*); *Rosenblit v. Kron (In re Kron)*, 240 B.R. 164, 165 (Bankr.D.Conn.1999) (Krechevsky, J.). Exceptions to discharge must be strictly construed in favor of the debtor in order to effectuate the fresh start policy of bankruptcy. *In re Kron*, 240 B.R. at 165. Moreover, the "debtor's conduct must involve moral turpitude or intentional wrong; mere negligence, poor business judgment or fraud implied in law (which may exist without imputation of bad faith or immorality) is insufficient." *Id.* at 165–66.

11. All of the foregoing was in accordance with this court's "Bar Date/Short Calendar Procedure" by which uncontested motions are granted without a hearing after notice and an opportunity to object has been afforded parties in interest.

## IV. COLLATERAL ESTOPPEL

 HBLM argues that the Motion should be granted under the doctrine of collateral estoppel because the Judgment is conclusive of the Fraud Issue. Collateral estoppel, or issue preclusion, prevents a party from relitigating an issue that has been determined by a final judgment in a prior suit. *Aetna Casualty & Surety Co. v. Jones*, 220 Conn. 285, 303–04, 596 A.2d 414 (1991). The basic premise of collateral estoppel is that "once an issue has been resolved in a prior proceeding, there is no further factfinding function to be performed." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 336 n. 23, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). The party seeking the benefit of the doctrine bears the burden of establishing its applicability. *Dowling v. United States*, 493 U.S. 342, 350, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990).

 Collateral estoppel or issue preclusion principles apply to nondischargeability proceedings in bankruptcy. *Grogan v. Garner*, 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Under the Full Faith and Credit Act, 28 U.S.C. § 1738, determinations regarding the preclusive effect of state court judgments are made using the law of the state in which the judgment was rendered. *See, e.g., Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985); *Spencer v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104, 110 (2d Cir.2002).

 Since the Judgment was rendered by the Connecticut Superior Court, Connecticut state law regarding collateral estoppel and issue preclusion applies in this case. The Connecticut Supreme Court has determined that a default judgment may have the preclusive effect of collateral estoppel only if there has been a "full and fair opportunity to litigate [the issue] and such issue[ ][was] necessary to

[the] default judgment." *Jackson v. R.G. Whipple, Inc.*, 225 Conn. 705, 717–18, 627 A.2d 374 (1993), *abrogated on other grounds by Macomber v. Travelers Prop. & Cas. Corp.*, 261 Conn. 620, 804 A.2d 180 (2002). *See also Virgo v. Lyons*, 209 Conn. 497, 501, 551 A.2d 1243 (1988) ("For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment." (internal quotations and citations omitted)). As the Connecticut Supreme Court explained in *Jackson:*

> An issue is *"actually litigated"* if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined.... An issue is *necessarily determined* if, in the absence of a determination of the issue, the judgment could not have been validly rendered.... If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action. Findings of nonessential issues usually have the characteristics of dicta.

*Jackson*, 225 Conn. at 714–15, 627 A.2d 374 (internal quotations and citations omitted) (emphasis in the original).

Accordingly, under the doctrine of collateral estoppel as articulated by the Connecticut Supreme Court, this court will give a default judgment preclusive effect in this Section 523(a)(2) nondischargeability proceeding only if the Fraud Issue was actually litigated in the State Court Proceeding and was necessary to the Judgment.

## V. ANALYSIS

### A. Preclusive Effect of the Judgment

 HBLM argues that this court should grant the Motion under the doc-

trine of collateral estoppel because the Judgment precludes this court from relitigating the Fraud Issue. Because HBLM has failed to offer any evidence that the claim of fraud in the State Court Complaint was necessary to the Judgment, the court concludes that the Judgment does not have preclusive effect on the Fraud Issue in this adversary proceeding.

The State Court Complaint lists multiple counts against Mr. Boucher: breach of contract; failure to pay for bargained for goods; unjust enrichment; negligent misrepresentation; and actual fraud. (*See* State Court Complaint.) However, the Judgment represents only that there was a "hearing in damages after default" and a "judgment after default" in the amount of $9,230.55 (including the principal, costs and attorney fees). (*See* Plaintiff's Exhibit A, Judgement Worksheet—Civil.) HBLM has submitted no proof that the Judgment was entered on the Fraud Count. Therefore, it is possible that the Judgment was entered on, for example, the breach of contract count of the State Court Complaint, in which case the Judgment would not be preclusive as to the Fraud Issue. For that reason and for the reasons which follow, it is impossible for this court to determine that the Fraud Count alone (or some other count preclusive with respect to the Fraud Issue) was *necessary* to the Judgment.

The Connecticut Supreme Court has held: "Where there is more than one possible reason for ... [a judgment], and the court ... cannot say that any one is necessarily inherent in the [judgment], the doctrine of collateral estoppel is inapplicable." *Dowling v. Finley Associates, Inc.,* 248

Conn. 364, 377, 727 A.2d 1245 (1999) (quoting *United States v. Irvin,* 787 F.2d 1506, 1515–16 (11th Cir.1986)). That conclusion comports with the Restatement (Second) of Judgments, which states, "[i]f a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone." Restatement (Second) of Judgments, § 27, cmt. i (1982).

*Dowling* and the Restatement comment do not deal with default judgments. However, the United States Court of Appeals for the Ninth Circuit has decided the instant question in a default judgment context. In *Harmon v. Kobrin (In re Kobrin),* 250 F.3d 1240 (9th Cir.2001), the court held that, under the circumstances there present, a default judgment rendered in state court on multiple grounds could not be given preclusive effect with respect to a Section 523(a)(2) "fraud" issue in a subsequent bankruptcy proceeding. In *Kobrin,* the court reasoned that because the state court made no express findings with regards to the claim of fraud in the state court judgment, the fraud issue was not actually litigated. *Id.* at 1248. Moreover, because the state court proceeding included claims unrelated to fraud, "the state court could have entered a default judgment against [the debtor] without finding that he had committed fraud. Thus, the issue [of fraud] was not necessarily decided by the prior proceeding." *Id.* at 1248–49 (applying California law).[12] *Accord Gilmore v. Gilmore (In re Gilmore),* No. 03–5005, 2004 WL 2044116, at *6 (Bankr.D.Kan. July 16, 2004) ("[T]he Plaintiff's [default] judgment should not be

---

**12.** Moreover, this court does not believe that the Connecticut Supreme Court would give more collateral estoppel effect to a default judgment entered on unspecified grounds than that court would give to a judgment issued after a fully litigated trial resulting in a general verdict. *Cf. Dowling v. Finley Associates, Inc., supra* (no collateral estoppel effect for judgment entered on a general verdict).

given preclusive effect here unless each of its two legal bases (that is, the one contained in Count I and the one contained in Count IV), standing alone, would satisfy the requirements of either § 523(a)(2), (4), or (6).") (applying Kansas law). *Cf. Cal–Micro, Inc. v. Cantrell (In re Cantrell),* 329 F.3d 1119, 1125 (9th Cir.2003) (different result under California law when punitive damages were granted as part of the default judgment because that grant established that the state court had found fraud).

The *Kobrin/Gilmore* reasoning applies in this case. Because the State Court Complaint pleaded both fraud and non-fraud counts and because the Judgment did not specify if it was rendered on a fraud or non-fraud count, it is impossible to conclude that the Fraud Issue was actually litigated or necessarily decided in the State Court Action. Consequently, litigation in this court of the Fraud Issue is not precluded by the doctrine of collateral estoppel (issue preclusion).

### B. *Prima Facie Case under Section 523(a)(2)(A)*

Nonetheless, the court could grant the Plaintiff's Motion if HBLM otherwise presented competent evidence establishing a prima facie case with respect to the Fraud Issue. On the record before the court, however, HBLM only proffers the bald allegation that Mr. Boucher procured materials from HBLM by "false pretenses, false representations and actual fraud" without any evidentiary support. There is no indication of the particulars of the alleged fraud. *Cf.* Fed. R. Civ. 9(b) (made applicable here by Rule 7009 of the Federal Rules of Bankruptcy Procedure) ("In all averments of fraud ... the circumstances

constituting fraud ... shall be stated with particularity."). Consequently, HBLM has failed to established a prima facie case with respect to the Fraud Issue either pursuant to collateral estoppel or otherwise.

### C. *Vacatur of the Avoidance Order*

The Complaint also seeks to vacate the Avoidance Order. However, the request fails to state a reason for vacatur (e.g., HBLM did not receive notice of the Avoidance Motion). Accordingly, the Motion cannot be granted with respect to vacatur of the Avoidance Order.[13]

## VI. CONCLUSION

For the reasons set forth above, the Motion is denied in all respects.

It is **SO ORDERED**.

---

**13.** Even if the court were to find that the Debt is nondischargeable under Section 523(a)(2), that would not adversely affect the Debtors'

avoidance rights under Section 522(f). *See In re Ash,* 166 B.R. 202 (Bankr.D.Conn.1994) (Krechevsky, J.)