**In re Gary S. BLONDER, Debtor.**

**Anthony Novak, Trustee, Plaintiff,**

**v.**

**Gary S. Blonder, Defendant.**

**Bankruptcy No. 90–21344.**
**Adversary No. 91–2210.**

United States Bankruptcy Court,
D. Connecticut.

March 17, 2000.

---

148

Martin W. Hoffman, Law Offices of Martin W. Hoffman, West Hartford, CT, for defendant-debtor.

Edward C. Taiman, Jr., Sabia & Hartley, LLC, Hartford, CT, for plaintiff-trustee.

*RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON SECOND AND THIRD COUNTS OF COMPLAINT*

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

### I.

Creditors, on June 29, 1990, filed an involuntary petition under Chapter 7 of the Bankruptcy Code against Gary S. Blonder ("the debtor"). The court, on September 10, 1990, entered an order for relief on the petition. On the debtor's motion, the court converted the case on September 18, 1990 to one under Chapter 11, with the debtor becoming a debtor-in-possession. The court, on April 18, 1991, reconverted the debtor's case to one under Chapter 7, and Thomas M. Germain ("Germain") was appointed Chapter 7 trustee.

Germain, on August 2, 1991, filed a four-count complaint against the debtor objecting to the granting of the debtor's discharge. The Second Count is based upon Bankruptcy Code § 727(a)(2)(B), and the Third Circuit is based upon § 727(a)(3).[1] The debtor, on December 3, 1991, filed an answer to the complaint. Anthony S. Novak ("Novak" or "the plaintiff") subsequently replaced Germain as successor trustee and as the plaintiff.

Novak, on December 9, 1999, filed a motion for summary judgment as to the Second and Third Counts of the complaint. The debtor timely filed an objection to the summary judgment motion generally contending that genuine issues of material facts exist to be tried.

### II.

*Section 727(a)(2)(B)*

#### A.

The Second Count asserts that during the period the debtor was a debtor-in-possession in the Chapter 11 case, he, with

1. Section 727(a) provides:
   The court shall grant the debtor a discharge unless—
   . . .
   (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
   . . .
   (B) property of the estate, after the date of the filing of the petition;
   (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

intent to defraud estate creditors, transferred property of the estate. The debtor, doing business under the name of "Blonders," bought, sold and brokered vehicles, boats, furniture and antiques. The debtor also owned or controlled three corporations—Allied Scrap Iron & Metal Corp. ("Allied"), Blonder Associates, Inc. ("Associates") and Blonder Marine & Charter, Inc. ("Marine"), among others. At all times concerned, Allied and Associates were insolvent and Marine was a non-operating entity with no assets.

Prior to the reconversion of the Chapter 11 case, the debtor, without court authority, transferred at least $76,976.00 to these three corporations as loans. The corporations, in turn, used the monies, in part at least, to pay the debtor a salary. During the same period, the debtor, without court authority, borrowed at least $50,800 by utilizing his credit cards to partially fund these loans. The debtor, during this period, also maintained a personal checking account in addition to the debtor-in-possession account, and he deposited $7,801.00 of estate monies into his personal checking account and has never repaid to the estate.

The debtor owned the realty known as 741 Windsor Street, Hartford, Connecticut at which Allied was a tenant. Prepetition, Allied was paying the debtor a monthly rental of $4,200 under a lease. In November 1990, without court approval, the debtor apparently modified the lease with Allied and set a monthly rental of $1,000.00. Allied, in November 1990, paid the debtor $14,600 in salary.

The plaintiff contends that these actions by the debtor, taken together, evidence the debtor's intent to defraud estate creditors. The debtor, in response, does not meaningfully contest any of the foregoing facts alleged by the plaintiff, but counters with two arguments. First, the debtor submitted his affidavit in which he avers he "did not intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under Title 11 with regard to the transactions described in the Plaintiff's Motion For Summary Judgment and supporting documents." (Debtor's Affidavit at ¶ 2.) Second, the debtor asserts that the monies transferred to his three corporations were "transactions ... in the ordinary course of the Debtor's business" and that "[p]rior to the filing of the petition, I regularly borrowed against my credit cards to fund working capital of my companies (in particular Allied Scrap Iron and Metal, Inc.), and these companies had regularly paid me back." (Debtor's Affidavit at ¶ 6.)

### B.

Fed.R.Civ.P. 56(c) provides that summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The moving party has the burden of proving that no material facts are in dispute, and in considering such a motion the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. The court in deciding a summary judgment motion cannot try issues of fact, but can only determine whether there are issues of fact to be tried. Courts generally find summary judgment to be ill-suited for resolving cases involving allegations of intent to defraud.

*Hirsch v. Cahill (In re Colonial Realty Company)*, 210 B.R. 921, 923 (Bankr. D.Conn.1997) (citations and quotations marks omitted).

Section 727(a)(2)(B) requires that *actual* intent to hinder, delay or defraud be established. "Constructive fraudulent intent cannot be the basis for denial of discharge, but fraudulent intent may be established by circumstantial evidence, or by inference drawn from a course of conduct. The statute is to be construed lib-

erally in favor of debtors and strictly against the objector.... Because a debtor is unlikely to testify directly that his intent was fraudulent, the court may deduce fraudulent intent from all the facts and circumstances of a case." *In re Devers,* 759 F.2d 751, 753–754 (9th Cir.1985) (citing *In re Adlman,* 541 F.2d 999, 1003 (2d Cir.1976); other citations omitted). Since, for the purpose of the plaintiff's motion, the debtor's affidavit must be treated as truthful (*e.g.,* that he had no actual intent to defraud), the debtor must be given the opportunity at trial to demonstrate the credibility of his averment, and summary judgment is not appropriate. The Second Circuit "has consistently held where subjective issues regarding a litigant's state of mind, motive, sincerity or conscience are squarely implicated, summary judgment would appear to be inappropriate and a trial indispensable." *Patrick v. LeFevre,* 745 F.2d 153, 159 (2d Cir.1984) (citations omitted). With regard to a motion for summary judgment involving an alleged fraudulent transfer, the Second Circuit had held "that a determination as to whether the property was transferred with actual intent to hinder [the defendant's] creditors involves issues of intent and credibility that were inappropriate for summary judgment and that should be resolved by the fact finder after a trial." *Citizens Bank of Clearwater v. Hunt,* 927 F.2d 707, 711 (2d Cir.1991).

## III.

### *Section 727(a)(3)*

#### A.

In the Third Count, the plaintiff asserts that the debtor failed to keep or preserve recorded information from which the following business transaction might be ascertained. The bankruptcy schedules filed by the debtor included this response to question 14(b) of the Statement of Affairs, which asked the debtor to disclose property transfers made during the year prior to the petition:

Debtor, in late 1989, transferred approximately $1,377,000.00 in antiques, paintings, and other collectibles to Blonder Associates, Inc. in repayment of a debt of approximately $2,000,000.00.

The debtor later testified during a meeting of creditors that he still owed Associates $820,000; that there were no promissory notes evidencing his debts to Associates, but that there was a confirming entry on Associates' books, and that he believed the basis of the debt were loans to him from Associates. On December 16, 1994, in response to an interrogatory to identify all documents the debtor executed in connection with debts to Associates, he responded "None." The debtor submitted to the plaintiff an 11–page document entitled, "Blonder Associates, Inc. Loans To From Shareholder–Account Detail For The Period From January 1, 1988 to September 12, 1990", which purports to show an astonishing number of transfers between the debtor and Associates, a handwritten ledger entry of Associates, showing receipt of $1,377,046 as a "partial paydown of debt by officers w/antiques," and the 1989 Associates tax return.

The plaintiff argues that the records submitted by the debtor fail to allow the plaintiff to reconstruct the transactions between Associates and the debtor to determine the net obligations between them and to document the antiques and other personal property items transferred to Associates as a paydown on the alleged debt. The plaintiff submitted not only his own affidavit to that effect, but also that of Richard Finkel, a Certified Public Accountant, a Certified Fraud Examiner and a Certified Insolvency and Reorganization Accountant, that the documents and records submitted by the debtor do not "adequately document the Debtor's business transactions with Blonder Associates, Inc.". (Finkel Affidavit at ¶ 16.)

The debtor, in response by his affidavit, contends the records he kept were sufficient to reconstruct the transfers to Associates. He concedes that there are no

records to show what items made up the $1,377,066 in value transferred to Associates, but argues the fact of the transfer and the facts of his indebtedness to Associates are sufficiently disclosed. He notes that Novak obtained a stipulated judgment against Associates on January 28, 1994 avoiding the $1,377,066 transfer as a preference and fraudulent transfer, based upon a complaint brought originally by Germain.

### B.

■■■ "It has long been law that the privilege of discharge depends upon the debtor's disclosure of a true and accurate picture of its financial affairs." *State Bank of India v. Chalasani*, 92 F.3d 1300, 1309 (2d Cir.1996). The records required will depend upon all of the facts and circumstances involved. *See, e.g. In re Halpern*, 387 F.2d 312, 314 (2d Cir. 1968) (requirements depend on "the practical problems of what can be expected of the type of person and type of business involved.") (citations omitted).

Intent to conceal the financial condition is no longer a necessary element to support an objection to a discharge for failure to keep books. The law ... does not require ... any special form of accounts. It is a question in each instance of reasonableness in the particular circumstances. Complete disclosure is in every case a condition precedent to the granting of the discharge, and if such a disclosure is not possible without the keeping of books or records, then the absence of such amounts to that failure to which the act applies. While it is always open to the bankrupt to affirmatively justify his failure to keep records, each case must stand upon its own facts with the inquiry always as to whether the bankrupt has sustained this burden of jurisdiction which the statute places upon him for his failure to keep adequate records.... The purpose and intent of section [727(a)(3) of the Bankruptcy Code] is to make the privilege of discharge dependent on a true presentation of the debtor's financial affairs. It was never intended that a bankrupt, af-

ter failure, should be excused from his indebtedness without showing an honest effort to reflect his entire business and not a part merely.

*In re Underhill*, 82 F.2d 258 (2d Cir.1936); *In re Scott*, 172 F.3d 959, 969 (7th Cir. 1999) ("Creditors are not required to risk the withholding or concealment of assets by the bankrupt under cover of a chaotic or incomplete set of books or records.") (citing *Underhill* as applicable under § 727(a)(3) of Bankruptcy Code).

The plaintiff has noted that the claims against the debtor exceeded $21,000,000. The court, on the record submitted, is not able to place the limited documentary evidence of the debtor's transaction with Associates within the total picture of the debtor's bankruptcy estate. That is, the impact of the alleged shortcomings of the debtor's recordkeeping cannot be evaluated in a summary judgment motion in the absence of a record establishing its significance to the estate.

### IV.

The plaintiff's motion for summary judgment as to the Second and Third Counts of the complaint is hereby denied. It is

SO ORDERED.