In re David H. SWIRSKY, Debtor.

Automated Salvage Transport, Co., L.L.C. as successor in interest by merger with Automated Salvage Transport, Inc., Plaintiff,

v.

David H. Swirsky, Defendant.

Bankruptcy No. 03–33545 (LMW).

Adversary No. 03–3128.

United States Bankruptcy Court, D. Connecticut.

Dec. 8, 2006.

John J. Robacynski, Esq., Gersten & Clifford, Hartford, CT, for Plaintiff/Movant.

David H. Swirsky, Branford, CT, Pro Se Defendant/Movant.

### MEMORANDUM OF DECISION AND ORDER

LORRAINE MURPHY WEIL, Bankruptcy Judge.

The matters before the court are (a) the above-captioned *pro se* defendant/debtor's (the "Debtor") Motion for Summary Judgment (A.P. Doc. I.D. No. 44, the "Debtor Motion")[1]; (b) the above-captioned plaintiff Automated Salvage Transport, Inc.'s ("ASTI") Motion for Summary Judgment (A.P. Doc. I.D. No. 49, the "ASTI Motion"); (c) ASTI's Memorandum of Law in Support of its Motion for Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment (A.P. Doc. I.D. No. 50, hereafter, the "ASTI Objection"); (d) the Debtor's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment dated September 28, 2004 (A.P. Doc. I.D. No. 59, hereafter, the

---

1. References herein to the docket of this chapter 7 case are in the following form: "Case Doc. I.D. No. ——." References herein to the docket of Adversary Proceeding No. 03–3128 (the "Adversary Proceeding") are in the following form: "A.P. Doc. I.D. No. ——."

The Debtor was previously represented by counsel in the bankruptcy case and the Adversary Proceeding. Prior counsel's motion to withdraw was granted (*see* A.P. Doc. I.D. Nos. 80, 86) and the Debtor has proceeded in a *pro se* capacity.

"Debtor Objection"); (e) the Debtor's Motion for Extension of Time To Complete Discovery, Request To Reset Trial Date and Objection to Plaintiff's Motion To Quash (A.P. Doc. I.D. No. 53, the "Extension Motion"); (f) ASTI's objection thereto (A.P. Doc. I.D. No. 54, the "Extension Objection"); (g) ASTI's Motion To Strike (A.P. Doc. I.D. No. 96, the "First Motion To Strike") the Debtor's Local Rule 56(a)1 and 56(a)2 Statements filed pursuant to D. Conn. L. Civ. R. 56(a); (h) ASTI's Motion To Strike Lack of Knowledge Claim (A.P. Doc. I.D. No. 148, the "Second Motion To Strike"); and (i) the Debtor's objection thereto (A.P. Doc. I.D. No. 149, the "Strike Objection").[2]

This court has jurisdiction over this matter as a core proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and that certain Order dated September 21, 1984 of the District Court (Daly, C.J.).[3]

## I. PROCEDURAL BACKGROUND

### A. The Chapter 7 Case

The Debtor commenced this bankruptcy case by the filing of a petition under chapter 7 of the Bankruptcy Code on July 11, 2003. Contemporaneously with his petition, the Debtor filed his schedules and Statement of Financial Affairs (Case Doc. I.D. No. 1 (as amended by Case Doc. I.D. No. 16)).

The Bankruptcy Code § 341 Meeting of Creditors (the "Meeting") was scheduled

for August 19, 2003 and October 20, 2003 was set as the bar date for filing complaints objecting to discharge and/or seeking determinations of nondischargeability. (See Case Doc. I.D. No. 2.) The Meeting was held as scheduled. On August 29, 2003, the chapter 7 trustee filed a Report of No Distribution (Case Doc. I.D. No. 7) concluding that there were no assets available for distribution to creditors. On November 7, 2003, an order (see Case Doc. I.D. No. 19) entered granting the Debtor his chapter 7 discharge.

### B. The Adversary Proceeding

On August 29, 2003, ASTI commenced the instant adversary proceeding by the filing of that certain timely Complaint To Determine Dischargeability of Debt (A.P. Doc. I.D. No. 1 (as amended by that certain Amended Complaint To Determine Dischargeability of Debt (A.P. Doc. I.D. No. 125, the "Amended Complaint")) collectively, the "Complaint").[4] The Complaint is in a single count which seeks a determination of nondischargeability pursuant to 11 U.S.C. §§ 523(a)(4) and (a)(6) of a debt in respect of a state court judgment (the "Judgment") of $250,000.00 in favor of ASTI. On June 24, 2004, the Debtor filed an answer (A.P. Doc. I.D. No. 22, the "Answer") which included (among other things) a special defense which disputed the legitimacy and amount of the Judgment.[5] The Contested Matters were filed

---

**2.** The Extension Motion, Extension Objection, First Motion To Strike, Second Motion To Strike and the Strike Objection are hereafter referred to collectively as the "Contested Matters."

**3.** That order referred to the "Bankruptcy Judges for this District" inter alia "all proceedings ... arising under ... Title 11, U.S.C. ...." References herein to title 11 of the United States Code or to the Bankruptcy Code are references to the same as they appeared prior to the effective date of their

amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

**4.** The Amended Complaint was amended solely to reflect the current name of ASTI as indicated in the caption above.

**5.** At the Trial (as defined hereafter), the court determined that because the Amended Complaint amended the caption of the Adversary Proceeding ·only to include the current name of ASTI and made no substantive changes and because the Debtor accepted ASTI's explana-

during the course of the Adversary Proceeding and will be discussed below.

On September 23, 2004, the Debtor filed the Debtor Motion and on September 28, 2004, ASTI filed the ASTI Motion [6] (collectively, the "Motions"). The Motions contend that no genuine issues of material fact exist and judgment should be granted in the respective movant's favor. On September 29, 2004, the ASTI Objection was filed. The Debtor Objection was filed on October 21, 2004. A hearing (the "Hearing") on the Motions was held on October 26, 2004 and the court took the Motions under advisement subject to further briefing.[7] The parties subsequently filed such briefs. On March 10, 2005, the court issued that certain Order Scheduling Partial Trial (A.P. Doc. I.D. No. 71, the "Order") (*see also* A.P. Doc. I.D. No. 72) with respect to the Motions. The Order determined that "for collateral estoppel purposes, the issue of whether there was a full and fair litigation in the state court proceeding (the 'Issue') is a question of fact, *see Jackson v. R.G. Whipple, Inc.*, 225 Conn. 705, 717–18, 627 A.2d 374 (1993), *abrogated on other grounds by Macomber*

*v. Travelers Prop. & Cas. Corp.*, 261 Conn. 620, 804 A.2d 180 (2002), and the court deems the record before it to be insufficient to make a determination in respect of the Issue." (Order at 1.) Accordingly, the court scheduled a partial trial (the "Trial") on the Issue and ordered that the "record made at the Trial should include (but not necessarily be limited to) admissible proof of service of all necessary notices with respect to the state court action, a certified copy of the motion to reopen and admissible proof of the court's action on that motion and its reasons therefor...." (*Id.* at 2.)

Trial was convened on November 15, 2005. At the Trial, Douglas Sienna [8] testified on behalf of ASTI and the Debtor and Attorney Joel Mark Jolles [9] testified on behalf of the Debtor.[10] ASTI introduced numerous documentary exhibits at the Trial.[11] The Debtor did not introduce any exhibits into evidence. At the conclusion of the Trial, the court took the Motions under advisement, subject to post-Trial briefing. Post–Trial briefing now is complete and the matter is ripe for decision.

---

tion with respect to the identity of the plaintiff herein, the Debtor did not have to answer the Amended Complaint and the Answer to the Complaint was sufficient. (*See* Trial Transcript (as hereafter defined) at 14–15.) The court granted leave to ASTI to amend the Complaint in the event it did not prevail on the ASTI Motion. (*Id.* at 16.)

6. On September 29, 2004, ASTI filed that certain Local Rule 56(a)1 Statement in support of the ASTI Motion. (*See* A.P. Doc. I.D. No. 51.) Annexed to that statement were Exhibits A through FF. Most of those exhibits were entered into evidence at Trial. Reference to those exhibits will appear in the following form: "Rule 56(a) Exh. ___"

7. At the Hearing, the court requested that the parties submit briefs on the issue of the effect (if any) that alleged attorney misconduct had on the "full and fair litigation" prong of collateral estoppel.

8. At the time of Trial, Douglas Sienna was employed as the comptroller of ASTI and had been so employed since August, 1996. Mr. Sienna's testimony was offered primarily as keeper of the records admitted as exhibits in the State Court Action (as defined below). (*See* Trial Transcript at 35.)

9. Attorney Jolles was the second of two attorneys to represent the Debtor in the State Court Action.

10. A transcript (the "Trial Transcript") of Trial testimony appears in the record of the Adversary Proceeding as A.P. Doc. I.D. No. 151. References herein to the Trial Transcript are in the following form: "Trial Transcript at ___."

11. References hereafter to those exhibits appear in the following form: "Trial Exh. ___."

## II. *FACTS*

Prior to June, 1992, the Debtor sold his business, Third Century Recycling, Inc. ("TCR") to ASTI. The sale of TCR closed on September 14, 1992. (*See* Trial Exh. A, the "Contract of Sale.")[12] The Contract of Sale contemplated that a covenant not to compete would be a part of the sale. On or about September 14, 1992, the Sellers, Joseph Swirsky and the Debtor entered into a certain Restrictive Covenant. (*See* Trial Exh. B, the "Restrictive Covenant.") The Restrictive Covenant for "valuable consideration"[13] prohibited the Sellers, Joseph Swirsky, David Swirsky

> his heirs, executors, administrators, successors and assigns that he will not reestablish, re-open, be engaged in, nor in any manner whatsoever become interested, as agent, or as stockholder, director or officer of a corporation, or otherwise, in any trade or occupation engaged in the business of paper and paper related products, collection, transportation, storage and brokerage and/or the collection, disposal, transfer, processing or handling in any manner whatsoever of solid waste or recyclable materials in the State of Connecticut for a period of five (5) years ["the Restriction Period"].

(Restrictive Covenant at 1.)

On September 14, 1992, the Debtor also entered into an employment agreement with ASTI. (*See* Rule 56(a) Exh. C, the "Employment Agreement.") Pursuant to the terms of the Employment Agreement, ASTI would employ the Debtor for a period of three (3) years, effective June 1, 1992. (*See id.* ¶ 1.) The Debtor was hired to work in a sales capacity in ASTI's refuse and recycling business and was prohibited from working "during the term of th[e] [Employment] Agreement ... as a[sic] EMPLOYEE or in any other capacity in any paper business, paper brokering, refuse business or recycling business in the State of Connecticut." (*Id.* ¶ 4.)

In January, 1995, the Debtor terminated his position with ASTI to take a position with a New Jersey company. (*See* Trial Exh. D.) By a letter dated January 18, 1995 to the Debtor, ASTI reiterated the terms of the Restrictive Covenant which it contended would expire on September 14, 1997. (*See id.*) By letter dated June 2, 1995, ASTI (through counsel) notified the Debtor of alleged violations of the Restrictive Covenant, reminded him of the expiration date of the Restrictive Covenant and threatened legal action for any future violations. (*See* Trial Exh. E.)

On or about October 21, 1997, ASTI commenced a state court proceeding (the "State Court Action") in the Superior Court, Judicial District of New Haven by the service of a writ, summons and complaint on the Debtor. (*See* Trial Exh. BBB.)[14] The complaint (as subsequently amended) (Trial Exh. BBB, the "State Court Complaint") asserted seven counts for relief as follows:

- First Count: breach of the Restrictive Covenant by engaging in the "paper business" in Connecticut during the Restriction Period.
- Second Count: violation of the Uniform Trade Secrets Act ("UTSA")

---

**12.** The Contract of Sale was entered into between B. Swirsky & Co., Inc. ("BSC"), TCR (collectively, the "Sellers") and ASTI. It was signed by Joseph Swirsky, as treasurer of BSC and TCR. Joseph Swirsky is the father of the Debtor. In 1992, the Debtor was the president and a director of BSC and TCR. (*See* Trial Exh. G (Defendant Compliance with Plaintiff's First Request for Disclosure and Production) ¶ 7.)

**13.** ASTI appeared to have paid $386,000.00 for the Restrictive Covenant. (*See* Trial Exh. A ¶ 2.)

**14.** Trial Exh. BBB is a certified copy of the state court file in the State Court Action.

(Conn. Gen.Stat. § 35–50 *et seq.*) by breaching a duty to maintain ASTI's trade secrets and utilizing such trade secrets to solicit ASTI's customers.

- Third Count: breach of the Employment Agreement by engaging in the paper business in Connecticut during the Debtor's employment with ASTI and using trade secrets of ASTI.

- Fourth Count: breach of the implied covenant of good faith and fair dealing by engaging in bad faith conduct and not acting in a "commercially reasonable manner."

- Fifth Count: breach of fiduciary duty and duty of loyalty to ASTI which "were exercised intentionally, maliciously and in bad faith" by engaging in conduct which "directly or indirectly harmed" ASTI.

- Sixth Count: violation of the Connecticut Unfair Trade Practices Act ("CUTPA") (Conn. Gen.Stat. § 42–110a *et seq.*) by "wrongfully, maliciously, and intentionally" engaging in the paper business in Connecticut and using ASTI's trade secrets to solicit ASTI's "customers, accounts and sources in the trade or commerce of the State of Connecticut" which resulted in a "personal gain and competitive advantage [that] was immoral, unethical, oppressive, unscrupulous or offensive to public policy and constituted unfair methods of competition and unfair or deceptive acts or practices [the "CUTPA Claim"]."

- Seventh Count: engaged in civil conspiracy by acting with third parties to "unlawfully induce [ASTI's] ... customers and accounts ... to breach or fail to renew their contracts ... in a scheme to financially harm ASTI.

(State Court Complaint at 1–5.) The State Court Complaint sought (among other things) injunctive relief pursuant to the UTSA, compensatory damages, punitive damages, damages pursuant to Conn. Gen. Stat. § 42–110g and attorney's fees and costs. (*See* State Court Complaint at 6.) On or about January 21, 1998, a default for failure to plead entered in the State Court Action—(*see* Trial Exh. BBB) which was subsequently vacated on March 9, 1998 (*see* Rule 56(a) Exh. Z).

On or about November 24, 1997, Frederick W. Krug, Esq. filed an appearance in the State Court Action on behalf of the Debtor. (*See* Trial Exhs. BBB.) On or about October 21, 1998, the Debtor (through his counsel) filed that certain Answer (Trial Exh. BBB, the "State Court Answer"). In the State Court Answer, the Debtor denied (among other things) (1) engaging in any paper related business in Connecticut during the Restriction Period; (2) breaching the Restrictive Covenant; (3) that ASTI's cost and price information, customer and source lists were confidential and proprietary; (4) breaching the Employment Agreement; and (5) causing any damage to ASTI. In the State Court Answer, the Debtor also interposed special defenses and a counterclaim.[15]

---

15. As special defenses, the Debtor contended that (1) the Restrictive Covenant was unenforceable because it was unreasonable with respect to duration and the restricted area and precluded the Debtor from obtaining employment in the area in which he was trained; (2) the Restrictive Covenant (more particularly, the geographical restrictions) became unenforceable as of May, 1998 when the Debtor developed cervical spasms and pain which precluded travel to New Jersey making the "geographical restrictions" unreasonable; and (3) the parties intended that the Restrictive Covenant commence on June 1, 1992 (not September 14, 1992) as did the Employment Agreement and because the alleged restricted conduct occurred after June 1, 1997, there was no violation of the Restrictive Covenant. The counterclaim sought a reformation of the Restrictive Covenant to reflect a June 1, 1992 effective date. The court notes that the foregoing reference to May, 1998 may have been

On or about November 4, 1998, the Debtor (through counsel) filed that certain Certificate of Closed Pleadings (*see* Trial Exh. BBB) certifying that the pleadings were closed and filed a Claim for Jury trial (*see id.*). On or about September 30, 1999, Attorney Krug filed a motion to withdraw his appearance in the State Court Action. (*See* Trial Exh. BBB.) [16] In the event the motion to withdraw was granted, Attorney Krug also filed a Notice of Intent To Withdraw Appearance pursuant to Practice Book § 3–10(b) (Trial Exh. BBB, the "Withdrawal Notice") instructing the Debtor (among other things) to either retain other counsel or file a *pro se* appearance in order to receive court notices. The Withdrawal Notice also stated that failure by the Debtor to do either might result in a non-suit or default judgment against the Debtor. (*See* Withdrawal Notice ¶ 5.) A copy of the Withdrawal Notice was mailed to the Debtor. The Debtor did not file a notice of appearance in the State Court Action. On October 26, 1999, the motion to withdraw was granted. (*See* Trial Exh. BBB.) It appears that the order granting that motion was mailed only to the attorney for ASTI. (*See* Rule 56(a) Exh. U.)

On or about April 6, 2001, a status conference was scheduled for May 2, 2001 in the State Court Action "to determine trial week certain and pretrial dates." (*See* Rule 56(a) Exh. V, the "Conference Notice.") The Conference Notice was sent only to the attorney for ASTI. (*See id.*) On or about May 7, 2001, that certain Notice of Default for Failure To Appear (Trial Exh. BBB; Rule 56(a) Exh. W, the "State Court Default") entered. The State Court Default provided in pertinent part: "Please be advised that a default has entered against the [Debtor] . . . for failure to appear on May 2, 2001 for a court-ordered: . . . status conference. . . ." (State Court Default.) It appears that the State Court Default was sent only to the attorney for ASTI.

On or about May 9, 2001, counsel for ASTI filed that certain Certificate of Closed Pleadings (Trial Exh. BBB, the "Certificate"). The Certificate "certified that the pleadings have been closed [and that] . . . the case will proceed [to] . . . Hearing in Damages to the Court." (*Id.*) Attorney Robacynski certified in the Certificate that a copy was mailed to "David Swirsky, 255 Kohary Dr. New Haven, CT 06515." (*See id.*) A copy of what appears to be an envelope with the foregoing addressee is annexed to the Certificate. (*See* Rule 56(a) Exh. X.)

Presumably, the Debtor received the Certificate because on or about May 11, 2001 he faxed a copy of the Certificate to Joel Jolles, Esq. (Trial Transcript at 83, 89 (testimony of Attorney Jolles).) [17] On or

---

erroneously recited as the Restrictive Covenant had expired by that date. For present purposes that error is not germane here.

**16.** That motion was prompted by Joseph Swirsky's intention to file a malpractice claim against Attorney Krug's law firm with respect to services provided by the firm. (*See id.*) For that reason, Mr. Krug did not believe he could work effectively with Joseph Swirsky (a prospective witness in the State Court Action) in the defense of the Debtor. (*See id.*) The Debtor has suggested that he believes that he has similar claims against his bankruptcy counsel and listed a "potential malpractice claim" against Joel Jolles, Esq., his subsequent counsel in the State Court Action, in his bankruptcy schedules. (*See* Case Doc. I.D. No. 16 (Amended Schedule B—Personal Property).)

**17.** Attorney Jolles previously represented Joseph Swirsky in matters involving (among others) ASTI including in the action *Cherry Realty, Inc. v. Automated Salvage Transport, Inc.*, CV 99 0150929 (the "Cherry Realty Action"). (Trial Exh. BBB, Amendment to Motion To Reopen and Set Aside Judgment (the "Motion To Reopen") ¶ 2.) Attorney Jolles was also retained by Joseph Swirsky to represent him in a potential malpractice claim against Attorney Krug's law firm. (*See* Trial

about May 15, 2001, Attorney Jolles filed an appearance (the "Appearance") in the State Court Action for the Debtor. (*See* Trial Transcript at 83 (testimony of Attorney Jolles); Trial Exh. BBB.) Attorney Jolles was aware that the State Court Default had entered against the Debtor but believed such default was for failure to file an appearance (as opposed to failure to appear at a pretrial conference). (*See* Motion To Reopen ¶¶ 5, 8.) Attorney Jolles believed filing the Appearance would cure the default. (*Id.* ¶ 8.) Attorney Jolles did not check the court files to determine the basis for the default. (Trial Transcript at 89 (testimony of Attorney Jolles).)

In June, 2001, Attorney Jolles closed his office and moved his business to his home. (Trial Transcript at 91 (testimony of Attorney Jolles).) Attorney Jolles did not notify the state court of his new address.[18] Between June, 2001 and June, 2002, Attorney Jolles experienced personal problems. In June, 2001, he went to Maryland to be with his ailing father who passed away on June 17, 2001. (Trial Transcript at 91 (testimony of Attorney Jolles).) He stayed in Maryland for the month of June, 2001. In October, 2001, the brother of Attorney Jolles was diagnosed with brain tumors and passed away in June, 2002. (*See id.* (testimony of Attorney Jolles).)

On or about October 25, 2001, the attorney for ASTI filed that certain Motion To Remove from Trial List (Trial Exh. BBB, the "Motion To Remove"). The Motion To Remove sought to strike the State Court Action from the trial list in light of the State Court Default. (*See id.*) A copy of the Motion To Remove was mailed to Attorney Jolles. Attorney Jolles received the Motion to Remove but it was misfiled in his Cherry Realty Action case file. (*See* Motion To Reopen ¶ 7.) The Motion To Remove was granted on November 15, 2001. (*See* State Court Docket.) Attorney Jolles subsequently received notice that the matter was struck from the trial list. (*See* Motion To Reopen ¶ 7.)

A second request for a hearing in damages was filed on or about November 20, 2001 by counsel for ASTI. (*See* Trial Exh. BBB.) Service of that request was mailed to Attorney Jolles. (*See id.*) Subsequently, a motion to remove the matter from the jury docket (Trial Exh. BBB) was filed by counsel for ASTI (for the same reasons as the Motion To Remove). Service of that motion was sent to Attorney Jolles. The motion was granted on June 17, 2002. (*See* Trial Exh. BBB.)

On or about June 17, 2002, that certain Notice of Assignment for Hearing in Damages (Rule 56(a) Exh. CC, the "Assignment Notice") issued which read in pertinent part:

> Please be advised that the above-referenced case has been assigned for a court hearing in damages before Hon. Jonathan E. Silbert in Courtroom 4E on 7/16/02 at 9:30 a.m. [the "Damages Hearing"].
>
> All parties and counsel must appear and proceed or risk entry of nonsuit, dismissal or default.

(Rule 56(a) Exh. CC.) It appears that the Assignment Notice was sent only to counsel for ASTI. (*See id.*) Attorney Jolles

---

Transcript at 78.) Prior to Joseph Swirsky's death in May, 2001, he requested that Attorney Jolles represent the Debtor in the State Court Action and Attorney Jolles agreed. (*See* Trial Transcript at 82 (testimony of Attorney Jolles).)

18. At some point, the correct address appeared in the record for Attorney Jolles. (*See* Trial Transcript at 92; Trial Exh. BBB.) Attorney Jolles testified that he believed the court obtained his new address through a change of address notice (which included his juris number) that he filed with the grievance committee. (Trial Transcript at 92.)

testified that he never received the Assignment Notice. (Trial Transcript at 96 (testimony of Attorney Jolles).) [19]

Neither the Debtor nor Attorney Jolles appeared at the Damages Hearing. At the Damages Hearing, Douglas Sienna testified and substantially the same exhibits were introduced at that hearing as were entered at the Trial. A copy of the transcript (the "Damages Hearing Transcript") of the Damages Hearing is in the record as Trial Exh. AAA. On or about July 17, 2002, that certain Memorandum of Decision (Trial Exh. BBB, the "State Court Decision") issued in the State Court Action. The State Court Decision provided in pertinent part:

> On September 14, 1992, the defendant entered into a restrictive agreement with the plaintiff which precluded the defendant from engaging in a solid waster [sic] or recyclable materials business in Connecticut for a period of five years. On January 20, 1995, David Swirsky terminated his employment with the plaintiff. Thereafter the defendant engaged in activities prohibited by the agreement.
>
> The plaintiff claims damages as a result of the actions of the defendant. From the evidence presented the court finds the plaintiff sustained damages of $250,000.00.
>
> The claim for attorneys fees is not provided for as to this defendant in either the [C]ontract of [S]ale ... or the Restrictive Covenant. Furthermore, the claim for attorney fees under CUTPA C.G.S. § 42–110g does not provide for an attorney fee because this claim does not relate to an injury to the general consuming public, but rather to the redress of a private wrong.
>
> Judgment shall enter for the plaintiff for $250,000.00 plus costs.

(Trial Exh. BBB). The State Court Decision was signed by Howard F. Zoarski, Trial Judge Referee. (See id.)

In November, 2002, counsel for ASTI sent a letter to the Debtor informing him of the entry of Judgment. (See Trial Transcript at 74 (testimony of the Debtor).) The Debtor forwarded that letter to Attorney Jolles. (See id.) Attorney Jolles testified that upon receipt of that letter, he became aware of the basis for State Court Default (failure to attend a pretrial conference), the Damages Hearing and the entry of the Judgment. (Trial Transcript at 83–84 (testimony of Attorney Jolles).) On or about November 20, 2002, Attorney Jolles filed a motion to stay enforcement of the Judgment pending a resolution of the motion to set aside the judgment (which was filed on the same date). (See Trial Exh. BBB.) The motion to stay was granted on December 3, 2002. (See id.) Attorney Jolles testified that, on or about November 20, 2002, he filed the Motion To Reopen arguing that the basis to reopen and set aside the Judgment was because after he filed the Appearance, he "was unaware of the subsequent events culminating with [the Damages Hearing] ..." and was prevented from putting on a defense "as a result of mistake, inadvertence and excusable neglect." (Motion To Reopen ¶¶ 8, 9.) ASTI objected to the Motion To Reopen. Attorney Jolles, however, testified that he "was actually surprised" that he did not submit an affidavit pursuant to Chapter 17 of the Connecticut Rules of Practice with the Motion To Reopen. (Trial Transcript at 87:7.) Attorney Jolles acknowledged that while the lack of an affidavit was enough to deny the Motion to Reopen, he did not know the reason the court denied the Motion To Reopen on December 16, 2002. (Id.; Trial Exh. BBB.) On or about January 21, 2003, Attorney Jolles stated

---

**19.** There is no indication in the state court record that service of the Assignment Notice was served on either the Debtor or Attorney Jolles.

that he filed a motion to reconsider (to which ASTI objected) and that motion was denied on January 30, 2003. (*See id.*) Attorney Jolles did not appeal that denial. (Trial Transcript at 88 (testimony of Attorney Jolles).) The Debtor did not file a malpractice lawsuit or a grievance against Attorney Jolles. (*Id.*) On or about January 16, 2003, ASTI obtained a property execution (the "Execution") upon the Judgment. (*See* Trial Exh. BBB.) Subsequently, the Execution was returned to ASTI as "wholly unsatisfied." (*Id.*)

## III. THE MOTIONS

### A. *The ASTI Motion*

ASTI argues that the doctrine of collateral estoppel mandates the granting of the ASTI Motion because the Debtor had a full and fair opportunity to litigate in the State Court Action and the other elements of collateral estoppel are satisfied in respect of the Judgment. With respect to Bankruptcy Code § 523(a)(4), ASTI argues that it alleged sufficient facts in the Second Count (violation of UTSA) and the Fifth Count (breach of fiduciary duty) of the State Court Complaint to establish larceny or a breach of fiduciary duty (the "Fiduciary Duty Issue"). (*See* A.P. Doc. I.D. No. 138 at 5–7.) With respect to Bankruptcy Code § 523(a)(6), ASTI argues that it alleged sufficient facts in the Second Count, the Sixth Count (violation of CUTPA) and the Seventh Count (civil conspiracy) of the State Court Complaint to establish willful and malicious injury to ASTI. (*See* A.P. Doc. I.D. No. 138 at 4–5.)

### B. *The Debtor Motion (and Debtor Objection)*

The Debtor argues that summary judgment should enter in his favor. With respect to Section 523(a)(4), he argues that ASTI failed to prove either that an express or technical trust created a fiduciary obligation on the Debtor's part or that the Debtor committed fraud or defalcation. (*See* A.P. Doc. I.D. No. 46 (Memorandum in Support of Debtor's Motion for Summary Judgment) at 5–8.) With respect to Section 523(a)(6), the Debtor argues that ASTI did not allege the requisite intent (the "Intent Issue") to establish a willful or malicious injury to ASTI. (*See id.* at 8–12.)

The Debtor Objection alleges that because the Debtor was not adequately represented in the State Court Action, he did not receive a full and fair opportunity to litigate. Therefore, the Debtor argues, the Judgment is not entitled to collateral estoppel effect. (*See* A.P. Doc. I.D. No. 59.)

## IV. ANALYSIS

### A. *Summary Judgment Standard*

"Summary judgment is appropriate only if the pleadings and submissions ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *The Andy Warhol Foundation for Visual Arts, Inc. v. Hayes (In re Hayes)*, 183 F.3d 162, 166 (2d Cir.1999). *See also* Fed. R.Civ.P. 56(c) (made applicable here by Fed. R. Bankr.P. 7056). The movant bears the burden of establishing the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("[T]he burden on the moving party may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case."). The court must view all ambiguities and draw all reasonable inferences in the light most favorable to the nonmovant. *See Novak v. Blonder (In re Blonder)*, 246 B.R. 147, 150 (Bankr.D.Conn.2000) (Krechevsky, J.). Ultimately, the role of the court is "not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. *Collateral Estoppel*

 Collateral estoppel, or issue preclusion, prevents a party from relitigating an issue that has been determined by a final judgment in a prior suit. *Aetna Casualty & Surety Co. v. Jones*, 220 Conn. 285, 303–04, 596 A.2d 414 (1991). The basic premise of collateral estoppel is that "once an issue has been resolved in a prior proceeding, there is no further factfinding function to be performed." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 336 n. 23, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). The party seeking the benefit of the doctrine bears the burden of establishing its applicability. *Dowling v. United States*, 493 U.S. 342, 350, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990).

 Collateral estoppel or issue preclusion principles apply to nondischargeability proceedings in bankruptcy. *Grogan v. Garner*, 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Under the Full Faith and Credit Act, 28 U.S.C. § 1738, determinations regarding the preclusive effect of state court judgments are made using the law of the state in which the judgment was rendered. *See, e.g., Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985); *Spencer v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104, 110 (2d Cir.2002).

 Since the Judgment was rendered by the Connecticut Superior Court, Connecticut state law regarding collateral estoppel and issue preclusion applies in this case. The Connecticut Supreme Court has determined that a default judgment may have the preclusive effect of collateral estoppel only if there has been a "full and fair opportunity to litigate issues and such issues were necessary to a default judgment." *Jackson*, 225 Conn. at 718, 627 A.2d 374. *See also Virgo v. Lyons*, 209 Conn. 497, 501, 551 A.2d 1243 (1988) ("For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment." (citations and internal quotation marks omitted)). As the Connecticut Supreme Court explained in *Jackson:*

> An issue is *necessarily determined* if, "in the absence of a determination of the issue, the judgment could not have been validly rendered." If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action. Findings on nonessential issues usually have the characteristics of dicta.

*Jackson*, 225 Conn. at 714–15, 627 A.2d 374 (citations and internal quotation marks omitted; emphasis in original). "[T]he appropriate inquiry ... is whether the party had an *adequate opportunity* to litigate the matter in the earlier proceeding." *Id.* at 717–18, 627 A.2d 374 (citation and internal quotation marks omitted; emphasis in original). *See also FDIC v. Roberti (In re Roberti)*, 201 B.R. 614, 618 (Bankr.D.Conn. 1996) (Shiff, J.) ("Actual litigation under Connecticut law requires a full and fair opportunity to litigate." (citation and internal quotation marks omitted)).

Accordingly, under the doctrine of collateral estoppel as articulated by the Connecticut Supreme Court, this court will grant the ASTI Motion only if the Debtor had a full and fair opportunity to litigate in the state court and the Fiduciary Duty Issue and/or the Intent Issue were necessary to the Judgment.

### C. *Dischargeability*

 "[T]he issue of nondischargeability [is] a matter of federal law governed by the terms of the Bankruptcy

Code." *Grogan*, 498 U.S. at 284, 111 S.Ct. 654. Bankruptcy Code § 523 sets forth the exceptions to discharge and states in relevant part as follows:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
>
> ...
>
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; [or]
>
> ...
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity....

11 U.S.C.A. § 523(a) (West 2005). Exceptions to discharge must be strictly construed in favor of the Debtor in order to effectuate the fresh start policy of bankruptcy. *Rosenblit v. Kron (In re Kron)*, 240 B.R. 164, 165 (Bankr.D.Conn.1999) (Krechevsky, J.). The party seeking to establish an exception to the discharge of a debt bears the burden of proof by a preponderance of the evidence. *Grogan*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755; *Ramos v. Rivera (In re Rivera)*, 217 B.R. 379, 384 (Bankr.D.Conn.1998) (Dabrowski, J.).

### 1. *Bankruptcy Code § 523(a)(4)*

 Under Bankruptcy Code § 523(a)(4), "[t]he question of whether a defalcation has occurred is reached only when the threshold determination that the debtor acted in a fiduciary capacity has been made." *Hayes*, 183 F.3d at 170. This defalcation exception not only limits "fiduciary" to trustees of actual or technical trust but includes "certain relationships not constituting actual [or technical] trusts." *Id.* at 169.

### 2. *Bankruptcy Code § 523(a)(6)*

 For a debt to be nondischargeable as a willful and malicious injury, it must arise from an intentional tort which is specifically intended to injure the plaintiff. *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). "The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Id.* (emphasis in original). Bankruptcy Code § 523(a)(6) is limited to intentional torts and does not except negligent or reckless torts. *Kawaauhau*, 523 U.S. at 61, 118 S.Ct. 974 "Intentional torts generally require that the actor intend 'the consequences of an act,' not simply 'the act itself.'" *Id.* at 61–62, 118 S.Ct. 974. Intentional breaches of contract standing alone do not qualify as willful and malicious injury within the meaning of § 523(a)(6). *McCarthy v. Radcliffe (In re Radcliffe)*, 317 B.R. 581, 589 (Bankr. D.Conn.2004) (Krechevsky, J.). *Cf. Kawaauhau*, 523 U.S. at 62, 118 S.Ct. 974 (declining to encompass a "knowing breach of contract" within the definition of willful and malicious).

### D. *Application of Law to Fact*

### 1. *Full and Fair Opportunity to Litigate*

 The Debtor argues that due to the acts and/or omissions of Attorney Jolles the Debtor was denied a full and fair opportunity to litigate and therefore collateral estoppel is not applicable here. The court finds that assertion unavailing.

The Debtor failed to file his own appearance or obtain replacement counsel in a timely manner. Attorney Jolles was unaware of or did not receive or misfiled several court notices and papers from counsel for ASTI. Attorney Jolles admitted that he did not check the court docket to ascertain the status of the State Court Action. (*See* Trial Transcript at 89 (testimony of Attorney Jolles).) He did not

supply the state court with his new address once he closed his Hamden office. He also admitted that he did not file an affidavit with the Motion To Reopen as required by state court practice. (*Id.* at 87.) Attorney Jolles conceded that the lack of an affidavit was sufficient to deny the Motion To Reopen. (*Id.*)

■■■■ The general rule is that knowledge of the attorney (or lack of knowledge) is imputed to the client. *Lebowitz v. McPike*, 157 Conn. 235, 242–43, 253 A.2d 1 (1968). Further, the client is bound by the acts or omissions of his attorney. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 397, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). In Connecticut, however, that "general rule may yield … to the special circumstances of a case … [such as when] an attorney acts in bad faith or intentionally neglects the client's business…." *Allen v. Nissley*, 184 Conn. 539, 543, 440 A.2d 231 (1981). At Trial, no evidence was presented and the court does not believe that Attorney Jolles either acted in bad faith or intentionally neglected the Debtor during the representation. Consequently, the actions (or inactions) of Attorney Jolles do not negate the fact that the Debtor had a full and fair opportunity to litigate and the court finds that the Debtor did in fact have a full and fair opportunity to litigate. The court analyzes the remaining elements of collateral estoppel with respect to the ASTI Motion below.

### 2. *Remaining Elements of Collateral Estoppel*

■■■■ As noted, ASTI argues that application of the doctrine of collateral estoppel

mandates granting the ASTI Motion. The State Court Complaint alleged multiple counts for liability against the Debtor: breach of the Restrictive Covenant; violation of the UTSA; breach of the Employment Agreement; breach of implied covenant of good faith and fair dealing; breach of fiduciary duty; violation of CUTPA; and civil conspiracy. In the State Court Decision, the court determined that the Debtor "engaged in activities prohibited by the … [Restrictive Covenant]" (State Court Decision at 1) and concluded that ASTI "sustained damages" from the "evidence presented." (*Id.*)

Based on the State Court Decision, the court concludes that the state court found that the Debtor breached the Restrictive Covenant (the First Count) and that ASTI was damaged thereby to the extent of $250,000.00. Accordingly, the First Count was necessary to the Judgment. Consequently, the Debtor is collaterally estopped from relitigating the breach of the Restrictive Covenant here (or the amount of damages properly awarded to ASTI as a result of such breach). However, breach of the Restrictive Covenant, standing alone, is not sufficient to satisfy the elements of either Bankruptcy Code § 523(a)(4) or (a)(6) and is not preclusive as to the Fiduciary Duty Issue or the Intent Issue.

ASTI argues that it properly pled the Fiduciary Duty Issue and the Intent Issue in several counts of the State Court Complaint and that such allegations were deemed admitted when the Debtor was defaulted.[20] That argument misses the point. As noted, the State Court Com-

---

20. That argument confuses judicial admissions and collateral estoppel. Judicial admissions apply only in the initial case itself. *See Ferreira v. Pringle*, 255 Conn. 330, 345, 766 A.2d 400 (2001) ("Factual allegations contained in pleadings upon which the case is tried are considered judicial admissions and hence irrefutable as long as they remain in the case." (citation and internal quotation marks omitted)). *See also American Tissue, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 351 F.Supp.2d 79, 96 (S.D.N.Y.2004) ("'[J]udicial admission only binds the party

plaint alleged seven causes of action. The State Court Decision is ambiguous with respect to whether any count of the State Court Complaint other than the First Count was necessary to the Judgment.

The Connecticut Supreme Court has held: "Where there is more than one possible reason for ... [a judgment], and the court ... cannot say that any one is necessarily inherent in the [judgment], the doctrine of collateral estoppel is inapplicable." *Dowling v. Finley Assocs., Inc.,* 248 Conn. 364, 377, 727 A.2d 1245 (1999) (quoting *United States v. Irvin,* 787 F.2d 1506, 1515–16 (11th Cir.1986)). This court has held that the foregoing rule applies to default judgments. *See H.J. Bushka Lumber & Millwork v. Boucher (In re Boucher),* 336 B.R. 27, 35–36 (Bankr. D.Conn.2005). *Accord Lemon v. Sottile (In re Sottile),* No. 05–2019, slip op. (Bankr.D.Conn. Feb. 6, 2006) (Krechevsky, J.). ASTI may have been entitled to a technical judgment on each count of the State Court Complaint, *see Catalina v. Nicolelli,* 90 Conn.App. 219, 876 A.2d 588 (2005), but that does not make each count of the State Court Complaint necessary to the Judgment for issue preclusion purposes. *Cf. Dowling v. Finley, supra;* Restatement (Second) of Judgments § 27, cmt. i ("If a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone."). Because it is not clear that any count other than the First Count "is necessarily inherent in the [judgment]," the court cannot conclude that either the Fiduciary Duty Issue or the Intent Issue were necessarily decided in the State Court Action. Therefore, litigation of the Fiduciary Duty Issue and the Intent Issue in this court is not precluded by collateral estoppel.[21]

The Fiduciary Duty Issue and the Intent Issue raise issues that are more appropriately dealt with at a trial. Moreover, the Second Circuit Court of Appeals "has consistently held where subjective issues regarding a litigant's state of mind, motive, sincerity or conscience are squarely implicated, summary judgment would appear to be inappropriate and a trial indispensable." *Patrick v. LeFevre,* 745 F.2d 153, 159 (2d Cir.1984) (citations omitted). *See also In re Blonder,* 246 B.R. 147, 151 (Bankr.D.Conn.2000) (Krechevsky, J.) ("Courts generally find summary judgment to be ill-suited for resolving cases involving allegations of intent...."). Accordingly, the court will deny the ASTI Motion.

### 3. *The Debtor Motion*

The Debtor argues that summary judgment should be granted in his favor

---

that makes it in the action in which it is made, not in separate and subsequent cases." (citation and internal quotation marks omitted)). Collateral estoppel, by definition, applies in a later case.

21. ASTI argues that because the default against the Debtor was issued as a sanction, the Judgment should have an enhanced collateral estoppel effect here. The court finds that argument unpersuasive under the circumstances presented here. ASTI further argues that the State Court Decision's reference to CUTPA to deny attorney's fees in the State Court Action implies that the CUTPA claim was necessary to the Judgment. However, as noted above, ASTI bears the burden to prove the elements of collateral estoppel. There is no element of the Judgment that derives exclusively from CUTPA (or any count of the State Court Complaint other than the First Count). This court deems the State Court Decision's passing reference to CUTPA to be an insufficient basis to find and/or conclude that the CUTPA count was necessary to the Judgment. Moreover, there is no basis in the Judgment for this court to conclude that a larceny finding was necessary to the Judgment.

because (1) the Complaint did not allege the "existence of a fiduciary duty that arose as a result of an express or technical trust" and "failed to establish that the [D]ebtor committed a fraud or defalcation" (*see* A.P. Doc. I.D. No. 46 at 5) and (2) the "debt allegedly owed to ... [ASTI] was not the result of willful [and malicious] injury (*see id.* at 9, 11).

 The Second Circuit has rejected the view that Bankruptcy Code § 523(a)(4) requires an "express" or "technical" trust. *See Hayes*, 183 F.3d at 169 ("[C]ertain relationships not constituting actual [or technical] trusts are within the defalcation exception."). Whether a relationship outside the ambit of an "express" or "technical" trust is a "fiduciary" relationship within the purview of Section § 523(a)(4) generally "require[s] an analysis of the specifics of the relationship ...," *May v. Lyon (In re Lyon)*, 348 B.R. 9, 24 (Bankr. D.Conn.2006). Accordingly, that issue is inappropriately raised in summary judgment proceedings here. The remaining grounds alleged by the Debtor for summary judgment likewise raise issues that are more appropriately addressed on the merits at a trial. Therefore, the Debtor Motion will be denied.[22]

## V. CONCLUSION

For the reasons set forth above, (1) the Debtor Motion is denied; (2) the ASTI Motion is denied; (3) the Debtor Objection is sustained; (4) the ASTI Objection is sustained; (5) the First Motion To Strike is denied as moot; (6) the Second Motion To Strike is denied as moot; (7) the Strike Objection is overruled as moot; (8) the Extension Motion is denied as moot; and

22. Counsel for ASTI shall file and serve a proposed amended pretrial order on or before December 18, 2006. Because a new pretrial

(9) the Extension Objection is overruled as moot.

It is **SO ORDERED.**

order will be filed and served, the Extension Motion and Extension Objection will be deemed moot.